278 So.2d 200

**James E. DUNAWAY**

**v.**

**STATE.**

**7 Div. 185.**

Court of Criminal Appeals of Alabama.

Feb. 6, 1973.

Rehearing Denied March 20, 1973.

Jesse W. Shotts, Birmingham, for appellant.

William J. Baxley, Atty. Gen., and George W. Royer, Jr., Asst. Atty. Gen., for the State.

TYSON, Judge.

Appellant was indicted for possessing a pistol after having been convicted of committing a crime of violence. Jury trial resulted in a conviction, and judgment set sentence at two years imprisonment.

Sergeant Robert Wilemon testified for the State that on the date in question, July 7, 1971, he observed in St. Clair County, Alabama, a 1971 Pontiac Grand Prix automobile, in which the appellant was a passenger, travelling west on I–20. Wilemon testified that he detected something peculiar about the way the license plate was attached to the car, and he radioed in for a registration verification. The information he received indicated that the owner of that license plate was one Jack Wise of Ashville, Alabama, and that the tag was supposed to be displayed on a 1964 Chevrolet.

Wilemon stopped the car and asked the driver to produce his driver's license, which he did. The license was in the name of Marvin A. Garmen. At that point, Wilemon placed the driver of the Pontiac under arrest for displaying an improper tag and placed him in the patrol car. Appellant remained seated on the passenger side in the Pontiac.

Wilemon testified that after placing the man identified as Garmen in the patrol car, he was approaching the Pontiac to record the car's serial number when Garmen got out of the patrol car and fled into nearby woods. Sergeant Wilemon then ordered appellant out of the Pontiac and searched him for weapons. He found a six-millimeter pistol, for which appellant could not produce a permit, the possession of which forms the basis of this prosecution under Title 14, Section 174, Code of Alabama 1940.

I

Appellant urges three instances of error. First, appellant complains of having to strike a jury from the same venire which had just witnessed a trial of the accused for a different offense. Appellant urges a denial of due process in his brief, stating that "it is beyond my comprehension that a juror could witness a defendant on trial for a serious offense and [that] would not bias that juror's opinion in a trial immediately following."

Just prior to this ruling the trial judge had excused all jurors who had just served on another case involving the appellant.

The identical question has been previously raised for our determination, and our

courts have consistently held that this is a matter within the sound discretion of the trial court. See Sharp v. State, 23 Ala. App. 457, 126 So. 895; Mann v. State, 33 Ala.App. 148, 30 So.2d 738; Mann v. State, 33 Ala.App. 115, 30 So.2d 462, cert. den. 249 Ala. 165, 30 So.2d 466; Gaskin v. State, 42 Ala.App. 290, 161 So.2d 503.

We find no abuse of discretion here.

## II

Conviction of the offense *sub judice* was obtained under Title 14, Section 174, Code of Alabama 1940, which reads as follows:

> "*Certain persons forbidden to possess pistol.*—(a) No person who has been convicted in this state or elsewhere of committing or attempting to commit a crime of violence shall own a pistol or have one in his possession or under his control."

Appellant undisputably possessed a pistol at the time of his arrest. It follows from a reading of the above statute that the State must also prove as an essential element of the offense that appellant had previously been convicted of committing or attempting to commit a crime of violence.

In this regard the State introduced into evidence over objection a certified copy of the indictment and trial docket sheets (R. pp. 25–29) in a case entitled The State of Alabama, Jefferson County v. James Edward Dunaway, Case No. 15243, August Session 1967, in which one James Edward Dunaway pled guilty to the charge of grand larceny.[1]

■ Proof of conviction comes from either (1) the original court record, or (2) a certified copy thereof, except where an admission of prior conviction is made. Smothers v. State, 39 Ala.App. 292, 98 So.2d 66; Goodwin v. State, 46 Ala.App. 149, 239 So.2d 221. The record clearly shows compliance with the best evidence rule by way of the second alternative.[2]

Appellant also contends in this connection that "there was never sufficient evidence that the indictment offered into evidence was an indictment against the same defendant as the James Edward Dunaway in the present trial."

■ The presumption is that identity of name gives rise to a prima facie presumption of person. Esco v. State, 278 Ala. 641, 179 So.2d 766; Ex parte Davis, 200 Ala. 577, 76 So. 935. As the State points out in brief, appellant introduced no evidence to rebut this presumption. Additionally, Chief Bowlin testified that in 1967 he appeared before a grand jury proceeding in Jefferson County in which one James Dunaway was then being charged with grand larceny and was subsequently convicted for that crime.

Bowlin verified that the James Dunaway in the former proceeding was the same James Dunaway in the instant case. Appellant voiced no objection as to this aspect of Bowlin's testimony.

■ Under these circumstances, we feel that the trial court did not err in allowing into evidence the certified copy of the aforementioned indictment.

## III

Appellant further contends that it was error to allow into evidence the pistol seized from appellant, alleging that it was

---

1. There is no question but that larceny is a crime of violence within Title 14, Section 174, Code of Alabama 1940. See Hodges v. State, 45 Ala.App. 29, 221 So. 2d 922; Goodwin v. State, 46 Ala.App. 149, 239 So.2d 221.

2. Prior to introducing a certified copy of the record showing appellant's prior conviction of grand larceny, Chief Ruble Bowlin of the Pell City Police Department testified that he knew of appellant's prior conviction. Although such oral testimony was not the best evidence, the appellant, at that time, made no objection to this mode of proof of his former conviction, and therefore may not now complain. Donahay v. State, 287 Ala. 716, 255 So.2d 599.

the product of an illegal search and seizure.

The facts relating to the search and seizure complained of have already been adequately emphasized. Appellant's contention rests on the theory that the questioned search was based on mere suspicion. The State, however, contends that the search was justified for the officer's protection, citing Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.

Applying the rationale of *Terry*, supra, the question to be resolved is whether the officer acted as a reasonably prudent man in his belief that he was dealing with an armed and dangerous individual. From *Terry*:

"In determining whether the officer acted reasonably . . . due weight must be given . . . to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." 392 U.S. at 27, 88 S.Ct. at 1883.

■ The pertinent facts from which reasonable inferences could be drawn are: (1) Sergeant Wilemon stopped a 1971 Grand Prix Pontiac bearing a license plate which he knew was registered to a 1964 Chevrolet; (2) Sergeant Wilemon knew that the license plate was registered in the name of Jack Wise; the driver produced a driver's license which identified him as Marvin A. Garmen; (3) after arresting the driver and placing him in the police vehicle, the suspect fled from the police vehicle into nearby woods; (4) appellant remained seated in the suspect automobile, did not attempt to flee, but was searched, according to Officer Wilemon, for weapons. The search of appellant revealed a pistol, for which appellant could not produce a permit. Appellant was apparently arrested on that ground.

■ It is well settled now that a policeman may conduct a limited search for weapons for his own safety when he justifiably believes that he is dealing with a potentially armed and dangerous individual. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917; Peters v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917.

We must be mindful of the admonition contained in Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676, as follows:

". . . Investigatory seizures would subject unlimited numbers of innocent persons to the harassment and ignominy incident to involuntary detention. Nothing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions be termed 'arrests' or 'investigatory detentions.' We made this explicit only last Term in Terry v. Ohio, 392 U.S. 1, 19, 88 S.Ct. 1868, 1878, 1879, 20 L.Ed.2d 889 (1968), when we rejected 'the notions that the Fourth Amendment does not come into play at all as a limitation upon police conduct if the officers stop short of something called a "technical arrest or a "full-blown search." ' "

■ There is, of course, no ready test for determining the reasonableness of a search other than by balancing the need to search against the invasion of privacy which a search involves. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.

This court in White v. State, 49 Ala. App. 5, 267 So.2d 802, per Cates, P. J., cited with approval the following language from People v. Navran, Colo., 483 P.2d 228:

"From this trilogy of cases [Terry, Sibron and Peters] we conclude that the authority to make a search without probable cause is limited in the following manner: There must be (a) some reason for the officer to confront the citizen in the first place, (b) something in the circumstances, including the citizen's reaction to the confrontation, must give the officer reason to suspect that the citizen may be armed and, thus, dangerous to

the officer or others, and (c) the search must be limited to a frisk directed at discovery and appropriation of weapons and not at evidence in general." [Bracketed material supplied.] 267 So.2d at 809.

Although appellant's mere presence in the suspect car did not mean that he lost immunities from search of his person to which he would otherwise be entitled, we are of the opinion from a consideration of the totality of the circumstances as shown by the evidence that Sergeant Wilemon, in the performance of his duties, was acting as a reasonably prudent man in searching appellant for weapons, with due regard for his own safety under the "stop and frisk" rule, regardless of whether there existed probable cause to make an arrest.

We have carefully considered the entire record and find same to be free from error, Title 15, Section 389, Code of Alabama 1940. The judgment of conviction is therefore due to be and the same is hereby

Affirmed.

All the Judges concur.