Possession of a pistol by a convicted felon; sentence: five years imprisonment.
Glenda Black testified that on the night of February 16, 1977, she and her family went shopping at Warehouse Groceries. She remained in their automobile with one child while her husband and another child entered the store. A short while later she heard firecracker-like sounds from the store and saw three black males exit the building. Mrs. Black stopped a young male passerby from entering the store, and he knelt for safety beside her car. Mrs. Black then observed appellant cross behind her car, walk up to the young man, point a gun at his head, and demand his wallet. When she looked up at appellant from inside the car, a shot was fired at her through the automobile windshield.
Investigator Allen Fondren of the Tuscaloosa Police Department stated on February 16, 1977, he was driving down Skyland Boulevard in Tuscaloosa, Alabama, when he heard a shot and saw a white male running from Warehouse Groceries flagging him down. He turned into the store parking lot, forcing an approaching speeding vehicle into a drainage ditch. Fondren then got his shotgun and ordered three black males out *Page 718 
of the automobile. Fondren testified that the driver of this vehicle was appellant. Two pistols were recovered from the area of the vehicle occupied by appellant. Another pistol was taken from the pocket of one of the other occupants of the car.
Michael Turner, a narcotics agent, testified that he observed the appellant through a window at police headquarters reach into his pocket, remove several bullets, and throw them under a table. Later Turner searched appellant and found two or three more .357 magnum bullets in his pockets.
 I
Appellant contends the trial court committed reversible error in admitting into evidence his pretrial statements admitting his prior convictions of certain crimes. Appellant argues such statements were made after he had made known to the police his wish to remain silent and were inadmissible as violative of his privilege against self-incrimination.
The record reveals appellant's argument in this regard is totally lacking in merit. Agent George Barrows testified that he read the appellant the Miranda warning and asked him if he understood, to which appellant responded affirmatively. He then requested appellant to sign a waiver of rights form, and appellant did so. Agent Barrows asked if he might question him, and appellant told him to "go ahead." The record reflects the following:
"Q. All right. So, did you ask him questions?
"A. Yes, sir.
"Q. What did you ask him?
"A. At that time, I asked him —
"MR. BIVENS: Your Honor, we object to that.
"THE COURT: Overruled.
"Q. Go ahead and answer that.
 "A. I asked him at that time if he was convicted felon.
"Q. And what did he say?
 "MR. BIVENS: Your Honor, we'd like to tender an objection to that question, no proper predicate has been laid for an introduction of that testimony.
"THE COURT: All right, I'll overrule.
"Q. And what did he say?
"A. He said he was.
 "Q. All right, did you have any other conversation with him?
"A. Yes, I asked him where he had been convicted.
"Q. And did he say anything to that?
"A. Yes, sir.
"Q. What did he say?
 "A. He stated twice in Birmingham, Alabama, and once or twice up north in Ohio.
"Q. All right. Did you ask him anything else?
"A. Yes, sir.
"Q. All right, what did you ask him?
 "A. I asked him what was he charged with, what he was convicted of.
"Q. And what, if anything, did he say?
"A. He —
 "MR. BIVENS: Your Honor, again we object, been no proper foundation laid for that.
 "THE COURT: All right, you're objecting to the predicate?
"MR. BIVENS: Yes, sir.
"THE COURT: All right, overruled.
"Q. What, if anything did he say?
"A. He said he could only remember one at that time.
"Q. All right. Did you ask him anything further?
"A. Yes, I asked him which one that was.
"Q. All right, and what, if anything, did he say?
"A. He stated burglary in Birmingham, Alabama, 1975.
"Q. Did you have any further conversation with him?
"A. Yes.
"Q. All right. Did you ask him any further questions?
"A. Yes, sir.
"Q. What did you ask him?
 "A. At that time I requested, I asked him if I could get a signed statement *Page 719 
from him concerning these facts — well, I asked him about weapons at that time, first.
"Q. All right. "A. And —
 "Q. Thereafter, did you obtain any additional information from the defendant?
"A. Yes, sir.
"Q. In what manner did you obtain that information?
 "A. On what we classify as a personal history sheet and fingerprints.
 "Q. All right. On the — let me show you an item marked for identification purposes as State's exhibit three and ask you if you can recognize what that is?
 "A. Yes, it's a personal history sheet we had the defendant fill out in his own handwriting requesting certain information concerning himself.
"Q. And has that sheet been filled out?
"A. Yes, sir."
The Miranda requirements were fully met, and it is very apparent that appellant did not indicate a desire to remain silent. Rather, he indicated the opposite by his willingness to cooperate in answering questions and completing the personal history form. The record does reveal that appellant refused "to answer any questions about the weapon," but his actions in total evidenced no desire to exercise his right to remain silent on the other subjects of interrogation set out above. Appellant's statement was properly received into evidence.
 II
Appellant's last contention is that the trial court erroneously denied his motion to exclude the State's evidence for failure to show that he was the same person against whom the judgment entry was entered in the prior conviction.
Identity of name raises a prima facie presumption of person.Dunaway v. State, 50 Ala. App. 200, 278 So.2d 200, cert. denied,291 Ala. 93, 278 So.2d 205 (1973). Appellant introduced no evidence to rebut this presumption of sameness of person. As the record reveals, the State showed with particularity the contents of the prior conviction record including appellant's name, his representation by counsel, and the fact of his conviction for burglary. Subsequently, the State reopened its case and introduced the judgment entry of appellant's prior burglary conviction. The appellant's only objection was to reopening the evidence and not to the correctness of the judgment entry. The trial judge has the discretion to reopen the evidence at any time prior to the close of final arguments. Title 7, § 252, Code of Ala. 1940 (now § 15-14-4, Code of Ala. 1975).
Additionally, the State presented a fingerprint expert who testified that the prints of appellant in this case were identical to the prints from the Jefferson County Sheriff's Department records of the man identified as the convicted felon in the prior burglary conviction. Finally, the State introduced appellant's own freely given out-of-court admission that he had been convicted in Birmingham of burglary. We feel that evidence introduced here, in light of the contents of the documents introduced, the expert testimony, and appellant's own admission, was sufficient to identify appellant as the man previously convicted and sustain the State's burden of proof in this case. Hunter v. State, 57 Ala. App. 651, 331 So.2d 406
(1976).
We have reviewed the grounds for reversal relied upon by appellant in light of the record and the briefs and find no error prejudicial to the substantial rights of appellant which would mandate a retrial of this cause.
AFFIRMED.
All the Judges concur. *Page 720