Robert Earl Oliver was charged by indictment with having a pistol in his possession or control after having been convicted of a crime of violence, to-wit, grand larceny. The jury found the appellant "guilty as charged," and the trial court set sentence at four years imprisonment in the penitentiary. It is from the overruling of the appellant's motion to exclude the State's evidence made during trial and his motion for new trial, each asserting that there was no probable cause for believing that the appellant was about to commit a felony, nor did he commit a misdemeanor in the officers' presence, therefore, there was no basis for stopping the appellant, patting him down and searching his person, that the appellant prosecutes this appeal.
Prior to trial the appellant filed a motion to suppress, asserting that the appellant had not committed a misdemeanor in the presence of the officers, nor was there probable cause to believe that the appellant was about to commit a felony, therefore, the stopping of the appellant by Huntsville Police Officer Steven Rousseau, patting him down, and searching his person on May 21, 1978, at 4223 Keith Street in Huntsville, was unlawful.
In support of this motion, Robert Earl Oliver testified that he had gone to the home of his friend, Leonard Parker, at 4223 Keith Street in Huntsville, to obtain a ride to his place of employment at the Diamond S Ranch at Lacey Springs in Morgan County where he worked on a farm. Upon arrival at the Parkers' residence, he stated a number of people had already gathered there, there were two police cars and several police officers, and he walked up to the house and asked one of the officers if he could go inside. Oliver stated he went inside and observed his friend, Leonard Parker, who had been wounded in the arm and was lying on the floor, and a woman had been shot. He walked back outside and saw three black and white police cars. Oliver indicated he was wearing a pair of blue jeans and had on a jersey. He stated that his right hand was bandaged, and in a sling, because he had been thrown from a horse and injured his right hand a few days earlier. Oliver indicated that, as he came back outside the house, he heard some woman yell and suddenly Huntsville Police Officer Steve Rousseau stopped him, pushed him against the trunk of Mrs. Humphrey's car, put his hand in Oliver's pocket, and pulled out a pistol, then put handcuffs on him. Oliver stated he was then placed in a police car and taken downtown, then told he was under arrest, and later was told that he was charged with carrying a concealed weapon after a crime of violence. Oliver indicated that Officer Rousseau never showed him a search or arrest warrant, and he had not been involved in any way with the shooting inside the house at Keith Street, but had arrived on the scene after the officers had the premises secured. Oliver testified that he was not loud or boisterous and had not committed any offense whatever in the presence of the officers, nor did they have any reason to stop and search him.
On cross-examination, Oliver stated, "The only reason he said he came to me was I was standing alone and looked excited." *Page 71 
Oliver stated that he had not pulled his pistol out of his pocket or told anyone that he had a pistol with him. Oliver indicated that he was carrying a twenty-five caliber Beretta in his right front pocket which he had borrowed that morning to use in his work.
John Henry Powell stated he went to the home of his friend, Leonard Parker, on the afternoon of May 21, 1978, and recalled that Stella Parker had shot her husband and a woman who was inside the house. He stated that Stella Parker had been brought outside and put in a police car before Robert Earl Oliver arrived at the Parkers' home on Keith Street. Powell stated that he did not see Oliver inside the house, but saw him standing in the yard and saw two or three officers go over and grab him, then search him, and that Oliver was just standing there and had not done anything at the time be was seized by the officers. He stated that he did not see the appellant pull out a gun, but someone had yelled something about a gun, and that he did not know who it was that yelled.
On cross-examination, Powell indicated that he did hear someone yell something about a gun before the officers went over to Oliver and searched him, but insisted that Oliver had a "big Ace bandage on his right hand."
The appellant's wife, Dorothy Jean Oliver, stated that she went to the residence of Leonard Parker on Keith Street on the afternoon of May 21, 1978, and that there "must have been thirty or forty people standing at or near the yard" when she arrived. She said several police cars were there and she saw her husband walk up and ask her, "What happened?" She said she told him, "I think Stella has shot a girl inside the house," and her husband replied, "What?" She said, "Yes, and I think she has shot Leonard Parker too." She stated that she later saw her husband go inside the house and come back out. She said that her husband's right hand was swollen, being injured while working with a horse on the farm. She said he had to go to the hospital, and his hand was bandaged. She stated that she saw the police grab her husband because he looked excited and that he did not have a gun in his hand. Mrs. Oliver admitted, however, that she heard Mrs. Washington yell, "he has got a gun, and he is fixing to shoot Stella." She said that her husband had been walking toward the police car where Stella Parker was seated. Mrs. Oliver stated that she never did see her husband pull the gun out of his pocket. She said the officers threw him against Mrs. Humphrey's car and searched him, then took a pistol out of his pocket. Mrs. Oliver indicated that her husband could not have pulled a pistol out of his pocket because his right hand was bandaged.
On cross-examination, Mrs. Oliver stated that she and Mrs. Washington went to the same church, and that her husband had asked Mrs. Washington's daughter to give her a ride home from the Keith Street residence. She stated that she had known Mrs. Washington "all her life." She admitted that Mrs. Washington did point at Robert Earl and yell, "He has a gun."
Margaret Washington testified that, on May 21, 1978, she was present at 4223 Keith Street in Huntsville following a shooting inside the home of the Parkers. She stated that she first saw Robert Earl Oliver that afternoon standing in the door of Mrs. Lula Mae Humphrey's home next door to the Parkers, and later saw Oliver's wife walk up. She said that Oliver asked her daughter, Margaret, to take his wife, Dorothy Jean, home, and her daughter stated that she could not do this, so Robert Earl walked away. She said that, later that evening, Robert Earl Oliver walked near where she was standing and she saw her daughter look at Oliver and scream. She asked her daughter what was wrong and her daughter said, "He's got a gun." Mrs. Washington then screamed for the police, and she heard Oliver state, "I am going to kill that bitch," then he started walking toward the police car where Stella Parker was seated inside. Mrs. Washington said she saw the barrel part of the pistol as she screamed for the police and saw two or three officers grab the appellant and push him against *Page 72 
Mrs. Humphrey's car to search him. She stated this occurred about 7:30 on the evening of May 21, 1978.
On cross-examination, Mrs. Washington stated that Stella Parker was seated on the right side of the front seat of the police car and a police officer was seated on the left side under the steering wheel when Robert Earl Oliver started toward the car and she yelled. She stated that later she found out the officer who first grabbed Oliver was Steve Rousseau and that later two other officers helped him. She said that the pistol was in Oliver's front pocket and the officers searched him and pulled it out, but that she did not see any search warrant. Mrs. Washington stated that she did not see a bandage on Oliver's right hand.
Huntsville Police Officer Robert Steven Rousseau testified that he answered the call to go to the scene of a shooting at 4223 Keith Street in the City of Huntsville on May 21, 1978. He stated that he was in the yard, helping secure the scene when, shortly before 8:00 p.m., he heard a woman shout, "He has got a gun," and saw a black male walk away toward a police car. Rousseau told the man, whom he identified in court as Robert Earl Oliver, to stop, and that he began to pat him down and Oliver resisted and began to wrestle with him. Two other officers came up and assisted him so that they placed Oliver against a parked car, patted him down and found a pistol in his right front pocket. Oliver was charged with carrying a concealed weapon and was taken to police headquarters for investigation where he later was charged with carrying a concealed weapon after commission of a crime of violence.
The trial court overruled the appellant's motion to suppress and trial commenced.
The State presented the testimony of Billy Harbin, Clerk of the Circuit Court of Madison County, who identified a minute entry showing that the appellant had been convicted of grand larceny and sentenced to six years imprisonment on October 18, 1972. This minute entry was admitted into evidence.
Huntsville Police Sergeant Fred Collie stated he went to 4223 Keith Street on May 21, 1978, to investigate a shooting. He stated that, while there, he received a twenty-five caliber pistol from Huntsville Police Officer Steve Rousseau, which pistol contained three live rounds, and that he had had this pistol in his care and possession since receiving it from Officer Rousseau in the front yard of the Parkers' residence on the night in question.
Margaret Washington testified for the State and reiterated her testimony concerning seeing the appellant standing in the yard at her home and asking her daughter, Margaret, to take his wife home. She said she later saw the appellant pull out a gun and exclaim, "I am going to kill that bitch," and start toward the car where Stella Parker was seated. She said she then stated, "Police, Robert is fixing to shoot Stella." She stated she saw the barrel of the pistol and later saw the officers stop Oliver and push him against the car, that Oliver began to tussle with the officers, and she saw the officers search him and get a pistol.
On cross-examination Mrs. Washington indicated that Stella Parker had shot a girl named Mary Ann, who was in the house with Leonard Parker on the date in question, and that Robert Earl Oliver did not come up to the Parkers' residence until after the shooting and the police officers were already there on the scene.
James Humphrey, a twelve year old, stated that he was present at the Parkers' residence on Keith Street on May 21, 1978, and he overheard Robert Earl Oliver ask Mrs. Washington's daughter to take his wife, Dorothy Jean home. He said he later saw Oliver reach in his right pocket and pull out a pistol and point it at his mother. He heard Mrs. Washington yell, "Police, Oliver's got a gun," and that he grabbed at Oliver and some Huntsville police officers then seized Oliver and tussled with him, then they took a pistol from his pocket. He stated that the officers handcuffed Oliver and placed him in a patrol car. He stated that his mother was the one who was seated inside the police car and had shot another woman earlier that day. *Page 73 
Kerry Blankenship stated that, on May 21, 1978, he had been working as a "training ranger" for five years with the Huntsville City police and had ridden to 4223 Keith Street with Huntsville Police Officers Rousseau and Wooten to investigate a shooting. He stated that since he was a trainee he did not carry a weapon.
Blankenship indicated he was stationed outside the Parkers' residence late that afternoon when Robert Earl Oliver came up to the door and stated to him that he was a member of the family and asked if he could go inside and look about the scene of the shooting. Blankenship admitted Oliver and stated that he stayed inside about fifteen minutes, then went back outside into the yard. Later on, he heard a woman scream, "Police," and he saw Officer Rousseau walk up to Oliver and try to frisk him and Oliver resisted. He stated that he then ran and seized one of Oliver's arms and that Officer Wooten grabbed the other and together with Officer Rousseau they pushed Oliver against a parked car and patted him down. Officer Rousseau found a pistol in Oliver's front pocket, which he removed, and they placed handcuffs on him, then put him in a patrol car. He stated that Oliver was charged with carrying a concealed weapon and later that night, after taking Oliver to Huntsville Police Headquarters, he was charged with carrying a concealed weapon after a crime of violence.
Huntsville Police Officer Robert Steven Rousseau corroborated the testimony of Trainee Ranger Blankenship and identified State's Exhibit Two, which was a pistol he removed from the pocket of Robert Earl Oliver after patting him down between 7:30 and 8:00 p.m. on Keith Street after resisting orders to stop. Officer Rousseau described the pistol as a Solt Flli Galesi Brescia Cal. 635, which contained three live rounds in the clip.
The appellant's motion to exclude the evidence was overruled.
Robert Earl Oliver took the stand to testify that he had been working at the Diamond S Ranch near Lacey Springs in Morgan County as a caretaker over a farm. He stated that a few days prior to May 21, 1978, he had been thrown from a horse and was injured. His right hand and elbow required medical attention at the emergency room at the Huntsville Hospital. He stated that his right hand was bandaged when he went to the home of his friend, Leonard Parker, to obtain a ride over to the farm where he worked. Oliver stated that he borrowed a pistol, a twenty-five caliber Beretta, that morning from a friend named Mike, but denied that the pistol, State's Exhibit Two, was on his person when he was stopped by Officer Rousseau. He stated that he did see Mrs. Washington there and heard someone cry out, "Oliver's got a gun," but denied pulling out a pistol, or ever saying that he was going to kill Stella Parker, or going toward the automobile where she was seated. He stated that Officer Rousseau approached him that evening and that he had not said or done anything, and Officer Rousseau twisted his arm and shoulder, then told him he was under arrest for carrying a concealed weapon. He stated that he had not pulled the pistol from his pocket and that it contained seven live rounds. Oliver stated that he later received his driver's license and personal belongings from the mother of Wanda Battle, the girl who was killed that afternoon by Stella Parker. Oliver denied pulling out the pistol at the scene. He stated his hand was bandaged and he could not have done so.
 I
The provisions of § 15-10-3, Code of Alabama 1975, are as follows:
"Arrest without warrant — When and for what allowed.
 "An officer may arrest any person without a warrant, on any day and at any time, for:
 "(1) Any public offense committed or a breach of the peace threatened in his presence;
 "(2) When a felony has been committed, though not in his presence, by the person arrested;
 "(3) When a felony has been committed and he has reasonable cause to believe that the person arrested committed it; *Page 74 
 "(4) When he has reasonable cause to believe that the person arrested has committed a felony, although it may afterwards appear that a felony had not in fact been committed; or
 "(5) On a charge made, upon reasonable cause, that the person arrested has committed a felony. (Code 1852, § 445; Code 1867, § 3994; Code 1876, § 4664; Code 1886, § 4262; Code 1896, § 5211; Code 1907, § 6269; Code 1923, § 3263; Code 1940, T. 15, § 154.)"
In construing the above section, our Supreme Court, in Duncanv. State, 278 Ala. 145, 176 So.2d 840 (1965), through Lawson, J., stated:
 "In Union Indemnity Co. v. Webster, 218 Ala. 468, 118 So. 794, it was said, in effect, that `reasonable cause to believe,' as used in § 154, Title 15, Code 1940, is knowledge of circumstances such as would lead a reasonable man of ordinary caution, acting impartially, reasonably and without prejudice, to believe the person arrested to be guilty. . . ."
In the case at bar, Officer Rousseau and Trainee Blankenship each described the appellant as resisting Officer Rousseau's instructions to stop when he attempted to pat him down after hearing Margaret Washington exclaim, "Police, police, he's got a gun. He is fixing to shoot Stella." These two officers, together with Officer Wooten, spread eagled Oliver against a vehicle and patted him down, removing a twenty-five caliber automatic from his pocket. This pistol contained three live rounds.
Margaret Washington testified she shouted, "Police, Oliver's got a gun," pointing to Oliver. She stated that she saw him remove it from his pocket and start toward the police car in which Stella Parker was seated, stating, "I am going to kill that bitch."
The appellant's own wife, Dorothy Jean Oliver, corroborated this part of Margaret Washington's testimony in her statements made at the suppression hearing before trial.
There can be no doubt that Officer Rousseau acted properly in patting down the appellant, Robert Earl Oliver, under the circumstances revealed by the evidence in this cause.
Clearly, the pat down of Oliver under the circumstances shown was lawful as Officer Rousseau believed he was dealing with a potentially armed and dangerous individual. Terry v. Ohio,392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). This was a limited search for weapons for his own safety and that of Mrs. Stella Parker, who had been arrested and placed in a police vehicle.
Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889,20 L.Ed.2d 917 (1968); Peters v. New York, 392 U.S. 40, 88 S.Ct. 1889,20 L.Ed.2d 917 (1968).
The resulting search and arrest of the appellant for carrying a concealed weapon was entirely proper. Dunaway v. State,50 Ala. App. 200, 278 So.2d 200, cert. denied, 291 Ala. 93,278 So.2d 205 (1973), and authorities therein cited; Bridges andRogers v. State, 52 Ala. App. 546, 295 So.2d 266 (1974).
We have carefully examined this record and find same to be free of error. The cause is therefore
AFFIRMED.
All the Judges concur.