Appellant was indicted by the Grand Jury of Walker County for selling tablets containing methaqualone, a controlled substance. Appellant had been tried twice on the indictment with both trials ending in mistrials because in each trial the jury was unable to reach a verdict. Appellant's counsel moved for and was granted a change of venue to Jefferson County
This case arose out of an undercover operation conducted by UNDO, a combined police operation directed at drug violations The officers involved were Birmingham Police Officers Stan McAdams, Michael Ware, Robert Lamm and Charles Jordan, and Jefferson County Sheriff's Officers Howard Brooks, William D Carson, Norman Dale Harris and George House
On July 14, 1980, McAdams and Carson were in a motel room at the Passport Inn Motel at 1100 8th Avenue South, Birmingham, Jefferson County, Alabama. The room had been wired so that Officers Brooks and Ware in the next room could hear what was said in McAdams' room. The microphone worked so that Brooks and Ware were able to hear what went on in the other room, but the tape recorder which was designed to record the conversations did not work
At 11:30 in the morning, the appellant arrived at the motel in a pink Cadillac and went to Officer McAdams' room. The appellant knocked on the door, and, when McAdams answered it, the appellant said that he had come to pick up the package "What package?", asked McAdams, and the appellant replied, "The package of money for the pills." Officer McAdams then let the appellant into the room and offered him a seat. Present in the room with Officer McAdams was Officer Bill Carson. Officers Brooks and Ware were listening to the conversations in the next room. The appellant discussed the pills he was proposing to sell to the undercover agents. After a bit, the appellant asked to use the bathroom, and Officer McAdams asked him if he had a weapon. The appellant replied that he had no weapon, but the officer insisted on frisking him. No weapon was found
After returning from the bathroom, the appellant discussed various proposed drug deals with the undercover officers. The appellant advised them that he could supply between two and five hundred pounds of marijuana a week. When McAdams replied that he didn't know if he could come up with that much money, the appellant offered to "front" McAdams with two hundred pounds of marijuana and give him seventy-two hours to raise the money to pay for it. The appellant also discussed the possibility of selling cocaine. The appellant advised McAdams and Carson that a five-pound block of 85% pure cocaine was available
The purpose of the meeting between these undercover agents and the appellant was the purchase of controlled substances McAdams had with him a suitcase containing in excess of $30,000. They were waiting for word from Officer Robert Lamm, also working undercover, that the pills had been received. At this time, Officer Lamm and Officer Charles Jordan were at Godfrey's Restaurant in Sumiton, Walker County, Alabama. They were there to meet the appellant's accomplice and receive the pills. They arrived at Godfrey's Restaurant at almost exactly the same time that the appellant was arriving at the Passport Inn in *Page 997 
Birmingham. They sat down and a short time later the appellant's accomplice approached them and identified himself simply as "Wayne." After a short conversation, Wayne said, "I am ready to deal." They had to wait a few minutes for the telephone to get free and then Officer Lamm used the phone to call Officer McAdams at the Passport Inn in Birmingham. McAdams informed Lamm that the appellant was in McAdams' room
Lamm and Jordan then went with Wayne to a 1978 Chevrolet Blazer automobile which Wayne had parked in the restaurant parking lot. It was later learned that this Blazer vehicle was registered to the appellant. Wayne opened the rear of the vehicle and displayed a large American Tourister suitcase and a smaller dark brown carrying bag. When these were opened plastic bags of white pills were revealed. Lamm then advised Wayne that he was ready to close the deal. Lamm picked up the large suitcase and Wayne the smaller one. They walked across the lot to the officers' pickup truck and placed the bags in the front seat of the pickup truck. At this point Wayne advised Lamm that, although the deal was for 50,000 pills, only 40,000 were contained in the two pieces of luggage. However, Wayne asserted that in forty-five minutes or so he could get the other 10,000 pills. Lamm stated that he did not want to wait, so they walked back into the restaurant and refigured the price. Lamm then telephoned McAdams and advised him to pay the money to the appellant
Meanwhile, back at the Passport Inn in Birmingham, McAdams threw the money on the bed and told the appellant that he could start counting it because they had most of the merchandise. The words "start the count" was the signal for Officers Ware and Brooks to enter McAdams' room from the room next door. They did this and placed the appellant under arrest. The appellant was told to call Wayne at the restaurant in Sumiton and tell Wayne that everything was all right. Appellant did this
The pills which the appellant sold Officer McAdams and which were delivered by Wayne to Officer Lamm were examined by the Alabama Department of Forensic Sciences, Birmingham Division The American Tourister suitcase was found to contain some 35,000 tablets and the other smaller bag was found to contain 5,051 tablets. Chemical analysis of the tablets revealed that they contained methaqualone
In a trial by jury in Jefferson County appellant was found guilty and fined twenty-five thousand dollars ($25,000.00). The court sentenced appellant to fifteen (15) years imprisonment and fined him twenty-five thousand dollars ($25,000.00)
At the close of the State's evidence appellant made a motion to exclude the State's evidence on the grounds that the State failed to prove the methaqualone was a controlled substance The trial court then allowed the State to reopen the case to introduce documents to prove that methaqualone was a controlled substance. Appellant claims that the trial court committed error by allowing the State to reopen its case and present evidence. To allow the State to reopen its case to prove that methaqualone was a controlled substance was not error. The trial court has the discretion to reopen its case and present evidence at any time prior to the close of final arguments. §15-14-4, Code of Alabama 1975. Williams v. State, Ala.Cr.App.,364 So.2d 717
The documents introduced were copies of records of the State Board of Health certified as true records by the State Health Officer who has custody of those records. Certified copies of public records signed and certified by the officer who has lawful custody are admissible into evidence. Gamble, McElroy'sAlabama Evidence, § 218.01 (1977)
These same documents were introduced in the case of Cassellv. State, 55 Ala. App. 502, 317 So.2d 348, where it was held that methaqualone was properly placed on the schedule of controlled substances by the State Board of Health. In that case the *Page 998 
court also took judicial notice of the reasonable rules and regulations of the State Board of Health, having been duly adopted, which have the force and effect of law. All other elements of the case of selling methaqualone, a controlled substance, were proved by the State and the trial court was correct in overruling appellant's motion to exclude the State's evidence
During the closing argument of the State the prosecutor referred to appellant as a "dope dealer." Appellant objected and moved for a mistrial, but was overruled
No matter how prejudicial the prosecutor's remarks may be they do not constitute reversible error if they are supported by the evidence. Davis v. State, 213 Ala. 541, 105 So. 677
The evidence presented by the State showed that appellant sold tens of thousands of methaqualone tablets to the undercover agents. This drug is a controlled substance and one who is caught selling such tablets in such quantities is certainly engaged in selling "dope." The evidence showed that the sale was carried out in a highly sophisticated and well organized manner, with a "bag man" to collect the money and a "drop man" to deliver the drugs, each in two widely separated locations. Incident to the sale appellant freely discussed the illegal drug business and sought to make future sales. Not only did he sell over forty thousand tablets of methaqualone but at the same time he offered to sell marijuana and cocaine. These facts were presented to the jury and were sufficient to justify the prosecutor in referring to appellant as a "dope dealer" during the closing argument. Ala.Dig. Criminal Law, Key No. 722 (3)
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none. The judgment of conviction is affirmed
AFFIRMED
All the Judges concur