Appellant Rolando Blanco was indicted under § 20-2-80(2)(a), Code of Alabama 1975, for trafficking in cocaine and § 20-2-70, Code of Alabama 1975, for possession of cocaine. Appellant Samuel Montanez *Page 117 
was indicted under § 20-2-80(2)(a) for trafficking in cocaine. The cases were consolidated for trial and both Blanco and Montanez were found guilty as charged in the indictments. Blanco was sentenced to forty years' imprisonment and a $250,000 fine for the trafficking count. He was also sentenced to fifteen years' imprisonment on the possession count, to run concurrently with his forty-year sentence. Montanez was sentenced to forty years' imprisonment and a $250,000 fine.
The record reveals that Harry B. Spence, an agent with the Drug Enforcement Administration (DEA) in Birmingham, Alabama, was contacted by Keith Krakowski, an agent with the DEA in Miami, Florida, on March 28, 1986. Agent Krakowski told Agent Spence that a reliable confidential informant had advised him that the appellants had departed from Miami on March 26, 1986, driving a tractor-trailer truck destined for the Naples, Florida, area to pick up a load of marijuana. The truck was described as a green Kenworth tractor trailer with a black and yellow sleeper. It was distinct in that the cab had painted on it a picture of a gorilla riding a horse and picking up a girl. The door had the words "Monvera Transport" painted on it. The informant had advised Krakowski that the appellants were staying in room 207 of a Holiday Inn in Alabama with the telephone number (205) 831-3410. Agent Spence determined that this was the Anniston-Oxford, Alabama, Holiday Inn. He advised the Anniston Police Department, who subsequently confirmed that the appellants were, in fact, registered in the room but found that the truck was not present.
An aerial search of the surrounding rural area was conducted and the truck was located behind a house on a farm belonging to "Hoss" Self. A search warrant was obtained and a search conducted. In a storage compartment of the truck, a bag which contained approximately one kilo of cocaine was found. Later when Blanco was apprehended and searched, a plastic case containing cocaine was found in his pocket.
From their convictions the appellants now appeal, raising the following issues.
 I
Appellants contend that the searches of the tractor truck and trailer and room 207 of the Holiday Inn were conducted upon improperly issued search warrants and that the evidence seized should have been suppressed. They contend, specifically, that the affidavits in support of the issuance of the search warrants were insufficient to supply the issuing judge with probable cause. The search warrant for the truck and trailer was issued upon the following affidavit:
 "My name is Harry B. Spence, Jr. I am a Special Agent with the United States Drug Enforcement Administration. On March 28, 1986, I received a telephone call from Keith Krakowski, Special Agent with the Drug Enforcement Administration in Miami, Florida. He advised that he had received information from a reliable, confidential informant, hereinafter referred to as C.I., who has given information in the past 6 months that has led to the seizure of approximately two kilograms of cocaine hydrochloride, two mac ten machine guns and silencer. That said C.I. told him on March 27, 1986, that Honorio [sic] Montanez and Rolando Blanco Torres [sic] had departed Miami, Florida, on March 26, 1986 driving a green Kenworth tractor trailer truck with a black and yellow sleeper. The cab of the truck has a picture of a gorilla riding a horse picking up a girl. Monvera Transport is painted on the door of the truck in gold. Montanez and Torres were travelling to the Naples, Florida area to pick up a load of marijuana, which C.I. did not know where the marijuana was to be delivered. On March 28, 1986, C.I. advised Special Agent Keith Krakowski that Montanez and Torres were in Alabama, staying at a Holiday Inn in Room 207. The Holiday Inn's Telephone Number was (205) 831-3410. I determined that this was the Anniston-Oxford, Alabama, Holiday Inn by calling the number. I subsequently advised Lt. Emmett Doggrell of the Anniston, *Page 118 
Alabama Police Department of the above. Lt. Doggrell subsequently informed me that Montanez and Torres were in fact checked into Room 207 of the Anniston-Oxford Holiday Inn. Lt. Doggrell further advised that the above described tractor trailer truck could not be located in the immediate vicinity of the Anniston-Oxford Holiday Inn. A surveillance was established on Room 207 of the Anniston-Oxford Holiday Inn and continues. The occupants of Room 207 have advised the Holiday Inn management that they would remain as guests of the Holiday Inn through March 29th. Talladega County Sheriff's Office Investigator, Mike Martin, and Anniston, Alabama Police Officer, Sgt. Mike Hembree, conducted an aerial search of the surrounding rural area. Hembree and Martin located a green Kenworth tractor trailer truck with a sleeper that fit the description of the above described tractor trailer truck, which is parked behind a house on County Road 466. Beginning at the intersection of the Eastaboga Road and County Road 466, proceed east in an easterly direction for one quarter of a mile to a dirt driveway on the right side of the road, turn right onto said dirt driveway and go to the end of said driveway to a natural color two story wood house. That the above described truck is located behind said natural color two story wood house. I respectfully request that a search warrant be issued for the above described tractor trailer truck for marijuana or other controlled substances and said truck has attached to it a trailer, silver in color. Based upon the foregoing, I have probable cause to believe that marijuana is being stored in the green Kenworth tractor trailer truck, which is heretofore more particularly described, and the trailer, silver in color, attached to said tractor. I request that a search warrant be issued for said green Kenworth tractor and silver trailer."
The search warrant for the search of room 207 of the Holiday Inn was issued upon the following affidavit:
 "My name is Harry B. Spence, Jr. I am a Special Agent with the Drug Enforcement Administration. On this date, I secured from Circuit Judge Jerry Fielding, Talladega County, Alabama, the attached search warrant. I here incorporate fully into this affidavit said warrant and the affidavits attached thereto. This warrant was executed this date by the Talladega County Sheriff's Office. Upon executing this warrant, we seized approximately 1 kilogram of cocaine. Our informant clearly stated that Honorio [sic] Montanez and Rolando Blanco Torres left Miami, Florida, on 3/26/86 driving this truck and marijuana was to be picked up in Naples, Florida. The trailer we searched had been cleaned but still smelled of marijuana. At this time the Montanez and Torres subjects are occupying Room 207, Holiday Inn, Oxford, Alabama. I request a warrant to search said room for cocaine. The substance we seized has been tested and shown to be cocaine."
In Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317,76 L.Ed.2d 527 (1983), the Supreme Court held as follows:
 "The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed."
Illinois v. Gates, 462 U.S. at 238-39, 103 S.Ct. at 2332.
The affidavit in support of the search of the truck set forth information establishing the veracity of the confidential informant. It also established that the information the confidential informant had supplied regarding appellants, which could be corroborated, had proven correct. That is, appellants were, in fact, registered in room 207 of the Holiday Inn and a truck meeting the rather unusual and detailed description given by the confidential informant *Page 119 
was found. In view of these factors we find that the issuance of the warrant for the search of the truck was proper, as it appeared that there was a "fair probability" that contraband would be found therein. Furthermore, in view of the product of the search of the truck, the appellants' connection to the truck, and the information confirming that appellants were residing in room 207 of the Holiday Inn, we find that abundant probable cause existed for the issuance of a warrant to search room 207. Accordingly, we find that the trial court in no way erred in denying the appellants' motion to suppress.
 II
Appellants contend that their arrest was illegal. Neither appellant was arrested pursuant to an arrest warrant, so their arrests must be justified under § 15-10-3(3), Code of Alabama 1975, which provides:
 "An officer may arrest any person without a warrant, on any day, and at any time. . . .
 "(3) When a felony has been committed and he has reasonable cause to believe that the person arrested committed it. . . ."
The term "reasonable cause" as used in this statute has been defined by this court as "knowledge of circumstances such as would lead a reasonable man of ordinary caution, acting impartially, reasonably and without prejudice, to believe the person arrested to be guilty." Harrell v. State, 475 So.2d 650,652 (Ala.Cr.App. 1985); Oliver v. State, 385 So.2d 69, 74
(Ala.Cr.App. 1980). The arresting officer need not have evidence before him that would support a conviction for the offense. He need only have knowledge of facts and circumstances which are reasonably trustworthy and which would lead a prudent man to believe that the accused had committed the offense.Nance v. State, 424 So.2d 1358 (Ala.Cr.App. 1982).
When officers arrived to search room 207 they found that appellant Montanez was in the room. Upon searching the room, officers found what they suspected to be cocaine. Montanez was then placed under arrest. Prior to the arrest of appellant Blanco, the arresting officer had received information that Blanco and Montanez had driven the truck to the Self farm, locked it, and then departed. The officer was aware that cocaine had been found in the truck. Upon these facts, we believe that there was "reasonable cause" to arrest both appellants under § 15-10-3(3), Code of Alabama 1975.
 III
Appellants contend that testimony by officers Spence and Martin regarding the fact that they smelled the odor of marijuana when they opened the trailer was evidence of an uncharged crime, and that the trial court erred when it overruled their objection to such testimony.
It is the general rule that evidence of offenses other than that specifically charged is inadmissible. Nicks v. State, [Ms. 6 Div. 556, January 27, 1987] (Ala.Cr.App. 1987); Allen v.State, 380 So.2d 313 (Ala.Cr.App. 1979), cert. denied, Ex parteAllen, 380 So.2d 341 (Ala. 1980), cert. denied, Allen v.Alabama, 449 U.S. 842, 101 S.Ct. 121, 66 L.Ed.2d 49 (1980). However, one of the exceptions to this rule applies "when the offense charged and the offense proposed to be proved are so connected that they form part of one transaction." Allen v.State, 380 So.2d at 328, quoting Dennison v. State, 17 Ala. App. 674,88 So. 211 (1921). "Alabama law provides for the admissibility of evidence of collateral crimes or acts as part of the prosecution's case-in-chief if the defendant's collateral misconduct is relevant to show his guilt other than by suggesting that he is more likely to be guilty because of his past misdeeds." Nicks, supra. In determining what evidence can be classified as "relevant," this Court has repeatedly referred to Underhill, Criminal Evidence § 154 (3d ed. 1923), which provides:
 "All evidence is relevant which throws, or tends to throw, any light upon the guilt or the innocence of the prisoner. And relevant evidence which is introduced to prove any material fact ought *Page 120 
not to be rejected merely because it proves, or tends to prove, that at some other time or at the same time the accused has been guilty of some other separate, independent and dissimilar crime. The general rule is well settled that all evidence must be relevant. If evidence is relevant upon the general issue of guilt, or innocence, no valid reason exists for its rejection merely because it may prove, or may tend to prove, that the accused committed some other crime, or may establish some collateral and unrelated fact. Evidence of other acts to be available must have some logical connection and reveal evidence of knowledge, design, plan, scheme, or conspiracy of the crime charged; or circumstantial evidence of identity of the person charged with the crime; or tend to corroborate direct evidence admitted."
Nicks, supra; Allen, supra.
We do, in the instant case, find that this evidence was intimately connected with the same transaction which is the basis of the State's case. The odor of marijuana and the cocaine were both discovered, pursuant to a valid search warrant, in the same truck. The decision whether to allow or not to allow evidence of collateral crimes or acts as part of the State's case-in-chief rests within the sound discretion of the trial judge. Nicks, supra; McGhee v. State, 333 So.2d 865
(Ala.Cr.App. 1976); McDonald v. State, 57 Ala. App. 529,329 So.2d 583 (1975), cert. quashed, 295 Ala. 410, 329 So.2d 596
(Ala. 1976), cert. denied, McDonald v. Alabama, 429 U.S. 834,97 S.Ct. 99, 50 L.Ed.2d 99 (1975). We find that the trial court did not err in allowing into evidence the testimony of the officers regarding the smell of marijuana which they uncovered during the search.
The appellants also object to the following questions by the prosecution of Officer Martin:
 "Q Now, I believe they were talking about your investigation. Let me ask you, first. In the Self residence, there was some marijuana, seeds and stuff, found, was there not?
"A Yes, sir.
 "Q And that case is still being investigated by the Talladega County Grand Jury?
"A Yes, sir.
 "Q Are you a member of a joint Federal-State investigation that you referred to earlier?
"A Yes, sir, I am.
 "A And there is, in fact, an ongoing joint Federal-State investigation?
"A Yes, sir, there is.
 "Q As a matter of fact, Mr. Self — he was being investigated prior to this time in addition to now, is that right?
"A Yes, sir.
 "Q As a matter of fact, prior to this time, when this truck was found, Mr. Self was being investigated and wasn't Rolando Blanco, Jr. and Samuel Montanez a part of that investigation?
"MR. RUBINO: I object.
"MR. APPELL: We move for a mistrial.
"MR. RUBINO: And move for a mistrial."
The record clearly reveals that defense counsel had previously questioned Officer Martin regarding the investigation of "Hoss" Self. Therefore, the basis for the motion for mistrial must be restricted to the final question set forth above in which the prosecution inquired as to whether appellants were subjects of the same investigation.
With regard to this question, the trial court took the following curative actions:
 "BY JUDGE FIELDING: Ladies and gentlemen of the jury I have some instructions for you at this time and then I am going to have a question for you after I read these questions and instructions to you. You have heard some testimony from the witness stand that the Defendants Blanco and Montanez had been investigated by Federal-State investigation, there was a question about that. Now, the question I have for you is this. Can you put this testimony out of your mind and not consider it any further in the case and render your verdict solely *Page 121 
on the evidence that is permitted by the Court, and the law as instructed to you by the Court? I have a question for you. That is, can you do this?
 "(WHEREUPON the court asked each individual juror: 'Can you do this?' and there were thirteen affirmative replies from the jury.)
 "THE COURT: Let the record show thirteen yeses to the question, 'Can you put this testimony out of your mind and not consider it any further in the case and render your verdict solely on the evidence that is permitted by the Court and the law that is instructed by the Court?' All right, motion denied. Go ahead."
We note that no answer was ever given to the prosecutor's question regarding the prior investigation. This, in conjunction with the fact that the trial court issued curative instructions and polled the jury, convinces us that the appellants were not prejudiced by the question. The motion for mistrial was, thus, properly denied.
 IV
The appellants finally contend that the evidence was insufficient to support the convictions.
Certainly there can be no question that appellant Blanco was guilty of possession of cocaine in that a container of cocaine was found on his person when he was searched at the time of his arrest. The convictions of the appellants for trafficking were based on constructive possession, and we will now examine the evidence to determine if the convictions were justified.
With regard to appellant Montanez, there was testimony which placed him with the truck in which the cocaine was found upon its arrival at the Self farm. Keys taken from Montanez's belt fit the ignition of the truck and locks on the trailer, including the lock to the compartment where the cocaine was found. The truck was registered to Wild Mountain Express, a corporation of which Montanez is president. Montanez was listed as the owner of the truck. Montanez's fingerprints were found in the locked truck.
With regard to appellant Blanco, testimony also placed him with the truck on its arrival at the Self farm. In Room 207 of the Holiday Inn in which Blanco was registered, a belt with the initials "R.B.Jr." was found. A set of keys inscribed with the initials "R.B.Jr. K/W" was found. These keys fit certain locks on the truck. The cocaine found on Blanco's person upon his arrest was found to be mixed with boric acid. Testimony of Ronald Hubbard, a forensic drug chemist and analyst with the Alabama Department of Forensic Sciences, revealed that of the 700 to 800 occasions he had tested cocaine, he had never found any to be mixed with boric acid. The cocaine seized in the truck was of this same unusual mixture of cocaine and boric acid as that found on Blanco's person.
We find that the above facts clearly establish that both appellants had constructive possession of the cocaine found in the truck. See Ward v. State, 484 So.2d 536 (Ala.Cr.App. 1985);Coleman v. State, 394 So.2d 82 (Ala.Cr.App. 1981). We find, therefore, that the evidence was sufficient to support the verdict and that the motion for judgment of acquittal was properly denied. This case is, accordingly, due to be affirmed.
AFFIRMED.
All the Judges concur.