ADAMS, Justice.
Joseph Williams was convicted of selling a “controlled substance” as defined by Code of Alabama 1975, § 20-2-25, and pro *519 hibited by § 20-2-70. The Court of Criminal Appeals affirmed the conviction in Williams v. State, 548 So.2d 516 (Ala.Cr.App.1988). This Court issued the writ of certiorari to review the following issues:
1) Whether the controlled substance in this case was unlawfully admitted into evidence because of a missing link in the chain of custody and a failure by the state to present at trial a witness who identified the substance; and
2) Were Williams’s rights to due process and equal protection denied due to alleged misconduct of the trial judge during the trial of this case?
On February 6, 1987, Geneva County Deputy Sheriff Betty Rose Pichón met with an informant, Margaret King, who was familiar with the drug subculture of the town of Hartford in Geneva County. Ms. King introduced Deputy Pichón to several persons who were involved in the drug trade in Hartford. On the next day, at approximately 4:00 p.m., Deputy Pichón and Ms. King entered into a transaction at an apartment in Hartford in which Ms. King purchased a small amount of a substance, later identified as “crack” cocaine, from defendant Williams and another individual. The transaction occurred in the presence of Deputy Pichón, and Ms. King then left the apartment and returned to the Geneva County Courthouse at approximately 10:30 p.m., where Pichón wrapped the “crack” in tissue and marked the tissue with the time of the transaction — 4:30 p.m. She then placed the evidence in a white legal-sized envelope and delivered it to Geneva County Sheriff Douglas Whittle. No explanation was given for the delay, and no testimony was offered regarding the security of the evidence. Sheriff Whittle placed the “crack” in an unlockable chest of drawers located in his bedroom in the sheriff’s living quarters in the Geneva County jail, where it remained overnight. Sheriff Whittle testified at trial that although he did not remain overnight in the same room with the evidence, he did stay overnight in the other rooms of the living quarters. On the next morning, Sheriff Whittle delivered the envelope containing the evidence to Chief Deputy Ken Tice, who stored the evidence in a locked desk drawer until it was delivered by Deputy Tony Hobbs to the Department of Forensic Science crime lab in Enterprise, Alabama, on March 16, 1987.
At trial Sheriff Whittle testified that his department used an evidence room, and that he, his secretary, and Tice were the only persons who possessed keys to that room. He further testified that the procedure followed by the Geneva County Sheriff’s Department regarding the placement of evidence in the evidence room was that two of the three persons possessing keys must be present to witness the placement of evidence in the evidence room, to ensure that evidence is not tampered with. Sheriff Whittle testified that on February 7, the date on which Deputy Pichón delivered the cocaine to him, neither his secretary nor Tice was present at the sheriff’s office to witness his placement of the evidence into the department’s evidence room.
Tice testified that when he prepared the evidence for the crime lab, he opened the envelope to look at the evidence, and he described it as a “rock-looking” substance wrapped in tissue. He did not recall the tissue as having anything written on it. Tice stated that he prepared a transmittal sheet for the evidence and placed it into another envelope and sealed it.[2] He then gave the sealed envelope, along with several other envelopes, to Deputy Tony Hobbs for delivery to the crime lab in Enterprise.
When presented with the evidence at trial, Tice did not recognize it. He said that his failure to recognize it was due to its changed condition. Deputy Hobbs testified that he transported the envelopes given him by Tice to the crime lab and delivered *520 them to David Thorne, an employee at the crime lab. Hobbs, during cross-examination, acknowledged that the transmittal sheet was improperly completed because it did not indicate the time when, or the location where, he received the evidence.
The sealed envelope was delivered by David Thorne to forensic chemist Joseph Saloom, who analyzed the evidence and found it to be cocaine. The state presented Mr. Saloom’s testimony at trial, but closed its case without presenting Mr. Thome’s testimony regarding the chain of custody.
After the close of the defendant’s case, and in the presence of the jury, the trial judge, the Honorable Charles L. Woods, asked the district attorney if he had any rebuttal, and the district attorney replied that he did not. Judge Woods, in the presence of the jury, responded by bowing his head, waiting silently for several moments, then throwing his pencil down on the Judge’s bench. Thereafter, the district attorney moved for a recess to prepare a rebuttal. Defense counsel interposed an objection, which was overruled by Judge Woods. On the following morning, Deputy Pichón was presented by the State as a rebuttal witness. She reiterated her testimony given during the State’s case in chief. The defense offered no surrebuttal, and the case proceeded to the jury, which convicted the defendant.
A
Defendant first contends that the substance identified as cocaine was unlawfully admitted because of several imperfections in the chain of custody.
The purpose of the establishment of the chain of custody is announced in Ex parte Williams, 505 So.2d 1254 (Ala.1987):
“The purpose for requiring that the chain of custody be shown is to establish to a reasonable probability that there has been no tampering with the evidence. Williams v. State, 375 So.2d 1257 (Ala.Cr.App.), cert. denied, 375 So.2d 1271 (Ala.1979); Tate v. State, 435 So.2d 190 (Ala.Cr.App.1983); Smith v. State, 446 So.2d 68 (Ala.Cr.App.1984). ‘The evidence need not negate the most remote possibility of substitution, alteration, or tampering with the evidence, but rather must prove to a reasonable probability that the item is the same as, and not substantially different from, the object as it existed at the beginning of the chain.’ Slaughter v. State, 411 So.2d 819, 822 (Ala.Cr.App.1981) (emphasis supplied).”
505 So.2d at 1255.
A showing that there was no break in the chain of custody is required to establish a sufficient predicate for admission into evidence. Ex parte Yarber, 375 So.2d 1231 (Ala.1979), reversed on other grounds, 437 So.2d 1330 (Ala.1983). The identification of the evidence and continuity of possession must be sufficiently established in order to assure the authenticity of the item, Ex parte Yarber, supra.
This state employs two separate standards for testing the chain of custody — the weak link test announced in Sommer v. State, 489 So.2d 643 (Ala.Crim.App.1986), and the missing link test announced in Mauldin v. State, 402 So.2d 1106 (Ala.Crim.App.1981).
Where a weak link in the chain of custody is found, the weight and credit afforded the evidence, rather than its admissibility, is questioned. Sommer, supra. Where a break in the chain of custody, or a “missing link” in the chain of custody is shown, the admissibility of the evidence is questioned, Mauldin, supra. After a careful review of the record in this case, we hold that defendant did establish weak links in the chain of custody, but failed to prove a missing link in the chain of custody.
We are unpersuaded by Williams’s arguments that Sheriff Whittle’s keeping the evidence in his living quarters overnight while he remained present therein, and Deputy Tice’s storing the evidence in a locked desk drawer until it was transported to the crime lab were “missing links” in the chain of custody. Furthermore, the argument that a missing link in the chain of custody was proved by the improperly completed transmittal sheet by employees at the Department of Foren *521 sic Sciences is also unpersuasive. Therefore, the evidence was properly admitted into evidence and no error can be found here, because the defendant was allowed to challenge the credibility of the evidence during trial.
B
We now turn our attention to the second issue for which we issued the writ of certio-rari.
Defendant Williams petitions this Court for a new trial because of the actions attributed to Judge Woods. Williams argues that the judge lost his objectivity during the trial and through his actions, in the presence of the jury, expressed a desire for a conviction. Williams contends that the actions of the trial judge became permanently ingrained in the minds of the jury and, therefore, tainted its verdict.
We do not reach this question in this case, because defense counsel made no objection to the trial judge’s alleged improper actions. Biddie v. State, 516 So.2d 846 (Ala.1987). The record reveals that defense counsel interposed his objection only to the court’s grant of the state’s motion for a recess until the next day. Clearly, no error occurred in this. See Ballenger v. State, 406 So.2d 995, 997 (Ala.Crim.App.1981), cert. den., 406 So.2d 998 (Ala.1981); cert. den. 456 U.S. 907, 102 S.Ct. 1754, 72 L.Ed.2d 164 (1982). Furthermore, were we to reach this question, we would note that the action of the trial judge could have been interpreted by the jury as dissatisfaction with the State’s case and, therefore, in the defendant’s favor.
For the foregoing reasons, we affirm.
AFFIRMED.
HORNSBY, C.J., and MADDOX, JONES, ALMON, SHORES, HOUSTON, STEAGALL and KENNEDY, JJ., concur.

. A transmittal sheet is a document used as a receipt between state law enforcement agencies to track the chain of custody of evidence. It identifies the subject by name and date of birth. It identifies the officer(s) or state personnel who handle the evidence, and the date(s), time(s), and location(s) where the evidence is handled. It also includes directions to the Department of Forensic Sciences regarding what the substance should be tested for.