**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Marilyn S. VELASCO, Defendant-Appellant.**

**No. 71–1808.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 19, 1972.

Decided Dec. 6, 1972.

held insufficient funds for payment of the checks. Her mother, the Bank's cashier, paid the checks from Bank funds, as a result of which the Bank lost $100,671.51. The Bank Board of Directors, upon learning of the mother's misapplication, deferred action against her upon her promises that money would be forthcoming to repay the "loans" from the Bank. The promises were not kept, the Bank demanded her resignation, and the indictments, trial and convictions[3] followed.

The sole issue presented on appeal is whether the district court erred in denying appellant's motions for acquittal made at the close of all the evidence and after the jury returned a guilty verdict.

In ruling upon appellant's motion for acquittal at the close of all the evidence, the question for the district judge was whether all reasonable men, on all the evidence presented, would of necessity find that the government did not prove beyond a reasonable doubt that appellant was sane in the relevant period, in that she was capable of forming the intent to commit the alleged crime. United States v. Westerhausen, 283 F.2d 844, 852 (7th Cir. 1960). And once the jury had returned a guilty verdict, the trial court would be bound to apply the same standard established in *Westerhausen* in order to grant a motion for acquittal.

In anticipation of an insanity defense the government moved before trial, under 18 U.S.C. § 4244, that appellant be examined to determine her competency to stand trial. Appellant objected, but the government's motion was granted. Appellant's sole defense at trial was that she was insane at the time the offenses occurred and therefore incapable of forming the intent necessary to commit the crimes charged.[4]

Ralph P. Zoercher, J. David Huber, Gary E. Becker, Tell City, Ind., for defendant-appellant.

Henry A. Schwarz, U. S. Atty., E. St. Louis, Ill., for plaintiff-appellee.

Before KILEY and CUMMINGS, Circuit Judges, and CAMPBELL, Senior District Judge.[1]

KILEY, Circuit Judge.

Marilyn Velasco (appellant) appeals from her conviction of aiding and abetting her mother, Verda Lou Stevison, in the misapplication of funds of the federally insured Bank of Sesser, Sesser, Illinois,[2] in violation of 18 U.S.C. § 2 and § 656. We affirm.

The following facts were stipulated: Appellant drew 48 checks against her Bank account in the period between May 12 and October 10, 1970. The account

---

1. Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

2. The jury found both defendants not guilty of conspiracy, 18 U.S.C. § 371, to commit the substantive offense.

3. The mother's conviction as principal was affirmed in an opinion filed simultaneously with this opinion.

4. Appellant's competency to stand trial is not in question on appeal.

■ As in *Westerhausen, supra,* at 852, once the government established a prima facie case there was a presumption of the appellant's sanity. Appellant presented evidence to rebut the presumption of sanity and to require submission of the issue to the jury. Several lay witnesses testified concerning appellant's eccentric behavior commencing in 1965 and extending to 1970: her mental breakdown in January, 1968, her delusions of grandeur, her assumption of the role of Ann Drury, a fictional wealthy Chicago businesswoman, appellant's fictional businesses, her falsehoods, her profligacy with money, her fears and attempted suicide. In addition there was testimony in her behalf by three expert psychiatric witnesses, Doctors Radcliffe, Smith and Schuster, who examined her after the time of the alleged offenses. All three testified that she suffered from mental illness or defect from May 12 to October 10, 1970, the relevant period of the indictment.

The foregoing testimony having rebutted the presumption of sanity, the presumption "disappeared" (see United States v. Bohle, 445 F.2d 54, 70 (7th Cir. 1971)) and the government had the burden, under *Westerhausen,* of going forward with its evidence to prove beyond reasonable doubt that appellant was sane and capable of forming the intent required to aid and abet her mother in committing the alleged offenses.

The substance of the expert opinion testimony for appellant is that she was psychotic during the relevant period, suffering from "thought disorder" rendering her incapable of guiding her conduct in a "logical and thoughtful manner," causing her to swing between moods of depression and euphoria and that she was incapable of distinguishing between right and wrong and of conforming her conduct to the law.

The government produced two expert witnesses, Doctors Fain and Groder. Their opinions, in response to the government's hypothetical questions, did not "rule in" a "separation from reality."

Their diagnostic opinions differed from those of appellant's experts. In substance they found that the person described in the government's hypothetical questions was neurotic rather than psychotic, and that she suffered from "hysterical personality disorder" and that such a person could distinguish between right and wrong and conform her conduct to the requirements of the law.

It is unlikely that the jury was persuaded one way or another by the contradictory technical terms used and conclusions reached by the experts. Nor do we think that the experts' opposing testimony, in less technical terms "thought disorder" and "hysterical personality disorder," would mean very much to the jury. In our view it is the expert testimony of the symptoms of the diagnosed diseases that would be the guiding light toward the jury verdict.

Each expert witness testified to the usual symptoms displayed by a victim of the disease diagnosed by each. Appellant's experts stated that the symptoms of a psychotic separated from reality were: delusions of grandeur, as in appellant's case the euphoric delusion that she was Ann Drury, an extremely wealthy businesswoman; and the other extreme, her attempted and threatened suicide and fears of physical illness; and also "attention seeking" and "pathological lying."

The expert testimony for the government of symptoms of "hysterical personality disorder" overlaps to a considerable extent the symptoms attributed by defense experts to a psychotic suffering from "thought disorder." The relevant overlap is in the symptoms of "attention seeking," "pathological lying," "dishonesty," "delusions of" and "fantasies of" great wealth. It was those constants, among the symptoms, that we think could cause reasonable doubt in the minds of reasonable men as to whether appellant was incapable of distinguishing between right and wrong and incapable of conforming her conduct to the law during the period when she wrote the worthless checks.

In deciding whether the trial court erred in denying the appellant's motions for acquittal we must take the evidence in the aspect most favorable to the government. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

We see no merit in several arguments aimed by appellant at the lack of lay testimony by government witnesses to meet the lay testimony of appellant's witnesses. The determination of the credibility of appellant's lay witnesses, as well as experts, was for the jury. United States v. Cooks, 359 F.2d 772, 773 (7th Cir. 1966).

The testimony of appellant's expert witnesses carried its own weakness; for example, the testimony that appellant was "at times" in the relevant period incapable of conforming her conduct to the law, and that she could in the period have had lucid intervals, could have caused the jury to think that the checks might have been written during lucid intervals. Also Doctor Smith criticized the diagnosis of Doctor Schuster. And Doctor Schuster based his opinion on statements by appellant to him although he knew of her symptom of "pathological lying" and he could not say she had not made false statements to him. Furthermore, there were the overlapping symptoms, testified to by the experts for both sides, which left the jury free to decide that appellant was not necessarily psychotic because of the symptoms she exhibited. Finally, the complaint that the government did not cross-examine Doctor Radcliffe is of no significance. In United States v. Robinson, 327 F.2d 959, 963 (7th Cir. 1964), the court said the government was not even required to provide expert testimony upon an insanity issue.

There was testimony that during 1968 and 1969 appellant was director of nursing at a convalescent center, supervised a staff of 45 members, purchased the drugs and supplies, conducted meetings of the convalescent center board, and managed the operation servicing 50 or 60 patients. The jury could have considered this testimony as rebutting the testimony of appellant's lay witnesses.

Expert testimony for appellant was that her condition improved after the relevant period, and that in June, 1971 she was no longer psychotic but was, of course, subject to remission under stress.

Appellant testified at the August, 1971 trial with ability to recall incidents involved in the charges against her. And her mother testified that her daughter appeared to have no lapses of memory at all, did not appear to be out of contact with reality, and appeared to know what she was doing during the May 12 to October 10, 1970 period.

The facts in *Westerhausen* are far different from the facts here and that case is not authority in aid of appellant on the facts before us. Nor is the proof here " 'overwhelming as to . . . insanity' " of appellant as the proof was said by the court to be in Nagell v. United States, 392 F.2d 934, 937 (5th Cir. 1968), quoting McKensie v. United States, 266 F.2d 524, 528 (10th Cir. 1959). We cannot conclude that the evidence of insanity was so overwhelmingly one-sided as to justify taking that issue from the jury. United States v. Robinson, 327 F.2d 959, 963 (7th Cir. 1964).

We hold that the district court did not err in denying appellant's motions for acquittal.

For the reasons given hereinabove, the judgment is affirmed.