**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Donald E. KENNEDY, Defendant-Appellant.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Linda May BRUNNER, a/k/a Linda Mae Brunner, Defendant-Appellant.**

**Nos. 77–1908, 77–1834.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 25, 1978.

Decided June 30, 1978.

Rehearings and Rehearing En Banc Denied Aug. 18, 1978.

As Corrected Oct. 24, 1978.

Arthur J. Inman, Gary T. Rafool, Peoria, Ill., for defendant-appellant.

Terry G. Harn, Asst. U. S. Atty., Peoria, Ill., for plaintiff-appellee.

Before CUMMINGS, TONE and BAUER, Circuit Judges.

TONE, Circuit Judge.

The defendants were charged in a single indictment with kidnapping in violation of 18 U.S.C. § 1201 and, in the case of Brunner, 18 U.S.C. § 2, and were convicted in separate jury trials. We affirm the convictions, deciding issues relating to the defendants' mental capacity in this opinion and the other issues by unpublished order.

The chain of events leading to the convictions began on January 25, 1977, when defendant Donald Kennedy shot and fatally wounded his stepfather in North Dakota. Kennedy fled in his stepfather's pick-up truck, accompanied by his fiancée, Linda Brunner. When they reached Galesburg, Illinois, the pick-up truck broke down, and could not be repaired for several days. Defendants thereafter hitched a ride with Mary Treadway, who was also driving a pick-up truck. She agreed to take them to Interstate 74. When they reached the expressway, however, Kennedy demanded that Mrs. Treadway drive the couple to Indianapolis, Indiana. She declined, and in the ensuing argument, was shot, although not fatally. With Mrs. Treadway still in the truck, Kennedy took the wheel and drove to Indianapolis.

After arriving in Indianapolis, Kennedy arranged to meet his natural father. He then drove to an abandoned building, shot Mrs. Treadway in the head, killing her, and left the body there. Both defendants remained in Indianapolis until their arrest by FBI agents several days later.

Defendants were indicted in the Southern District of Illinois for kidnapping Mrs. Treadway. They were tried individually, and both convicted. Kennedy was sentenced to life imprisonment, Brunner to imprisonment for twenty-seven years.

Both defendants attack their convictions as not supported by evidence of guilt beyond a reasonable doubt because psychiatric testimony offered on their behalf was unrebutted.

Brunner, unlike Kennedy, did not assert an insanity defense, but rather relied on a

psychiatrist's testimony to disprove her ability to form the requisite intent to commit the crime of kidnapping. *See United States v. Gorman,* 393 F.2d 209, 211 (7th Cir.), *cert. denied,* 393 U.S. 832, 89 S.Ct. 102, 21 L.Ed.2d 103 (1968). The psychiatrist who examined her testified that in his opinion she was mentally incapable of knowing and wilful participation in the crime charged, because at all times during and after the kidnapping she was suffering from transient situational disturbance, a mental condition known in the common vernacular as "shell shock." The government produced no expert witnesses of its own to refute this testimony. Brunner argues, accordingly, that the jury's verdict is not rationally consistent with the evidence presented in regard to her mental state. Moreover, she argues that testimony of prosecution lay witnesses, describing Brunner's behavior as withdrawn, actually supports the psychiatrist's diagnosis.

There is no requirement that the government rebut expert testimony with its own expert. *E. g., United States v. Velasco,* 471 F.2d 112, 115 (7th Cir. 1972); *United States v. Robinson,* 327 F.2d 959, 963 (7th Cir.), *cert. denied,* 377 U.S. 1003, 84 S.Ct. 1938, 12 L.Ed.2d 1052 (1964); *United States v. Cain,* 298 F.2d 934, 936 (7th Cir.), *cert. denied,* 370 U.S. 902, 82 S.Ct. 1250, 8 L.Ed.2d 400 (1962). The same result may instead be accomplished by presenting lay witnesses or other evidence, or by cross-examination designed to weaken the defense expert's credibility. In light of all the evidence, including Brunner's account of the events in a confession she made to the F.B.I. and the testimony of several witnesses who observed her shortly after the offense and saw nothing unusual in her demeanor, the jury could reasonably have inferred that she was capable of knowing participation in the kidnapping.

Defendant Kennedy raised the defense of insanity. The psychiatrist who examined him testified that as a child Kennedy had exhibited symptoms of hyperkinesia, and that he had developed a sociopathic personality, which was the result of minimal brain disfunction. Kennedy's mother testified to his early childhood emotional problems and early use of drugs. The psychiatrist was of the opinion that the combination of hyperkinesia, drugs, and alcohol rendered Kennedy unable to conform his conduct to the requirements of the law. The prosecution did not call an expert witness to rebut this testimony, but a number of lay witnesses testified that they did not observe any abnormal behavior on the part of Kennedy around the time of the crime. In addition, factors discrediting the expert's testimony were brought out.

Kennedy insists that the testimony he put forth on the insanity issue was "uncontradicted" and therefore the government did not meet its burden of proving beyond a reasonable doubt that he was sane when the crime was committed, *United States v. Westerhausen,* 283 F.2d 844, 852 (7th Cir. 1960), and as a matter of law the conviction cannot be sustained. As we have stated, however, there is no requirement that the government present its own expert witnesses, and this is true whether the insanity defense is raised or the defendant merely seeks to prove lack of the requisite intent. To overturn his conviction Kennedy must show that reasonable persons hearing the evidence could not have concluded beyond a reasonable doubt that he was sane. *United States v. Greene,* 497 F.2d 1068, 1072–1073 (7th Cir. 1974), *cert. denied,* 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975); see also *United States v. Robinson, supra,* 327 F.2d at 963. The jury could properly conclude from the evidence of Kennedy's conduct that he possessed the requisite mental capacity, and, in doing so, the jury was entitled to discount not only the expert testimony but also the lay testimony of Kennedy's relatives. *See United States v. Greene, supra,* 497 F.2d at 1073; *United States v. Kissane,* 478 F.2d 1098, 1100 (7th Cir. 1973). The evidence, viewed in the light most favorable to the government, supports the jury's verdict that Kennedy was legally sane.

The other issues raised by these appeals do not meet the criteria for publication

stated in Circuit Rule 35 and are treated in an unpublished order issued contemporaneously with this opinion. Finding all of the defendants' arguments to be lacking in merit, we affirm the judgments of conviction in both cases.

AFFIRMED.