Robbery; sentence: fifteen years imprisonment.
Appellant contends that a preponderance of the evidence at trial proved his insanity at the time of the commission of the offense and that the trial court erred to reversal in overruling his motion for a new trial based on that ground.
Early on the morning of November 28, 1978, Dick Robbins was driving to work, going east on Highway 84 toward Evergreen, when he saw the appellant hitchhiking and gave him a ride. When Robbins reached the junction of Highway 84 and Interstate 65, he asked the appellant where he wanted to get out. After a momentary hesitation, the appellant pulled a pistol and told him to drive south on Interstate 65. Robbins, under the pretense of needing gasoline, pulled into a nearby service station owned by Murray Stinson. Robbins immediately jumped from the car, ran to the rear of the station, and shouted to Stinson to call the police. Robbins testified that during the ten minutes in his presence the appellant acted and appeared normal.
Murray Stinson, the victim of the robbery, testified that after Robbins shouted to him the appellant entered his station and robbed him at gunpoint of $223. He stated that the appellant was in his presence approximately ten minutes and that he "acted all right to me." He also stated that appellant's appearance then and at trial was substantially the same.
Shortly after the appellant ran from the scene of the robbery, he encountered George Massey, a long distance truck driver. Massey testified that on the morning in *Page 490 
question he was sleeping in his parked tractor-trailer truck near the Monroeville exit of Interstate 65 and Highway 84 when he was awakened by the appellant shaking the cab of the vehicle. The appellant pointed a pistol at him and demanded a ride. He asked the appellant if he needed money, but the appellant replied that he did not as he had just robbed a store. Massey drove south on Interstate 65 for approximately twenty-two miles until the appellant laid the pistol down on the seat between them in order to count the stolen money. Massey grabbed for the pistol and a struggle ensued during which time the truck crossed the highway median and wrecked. Massey stated that he and the appellant fell out of the cab and continued struggling. Shortly thereafter Massey gained control of the pistol, and the appellant climbed the highway boundary fence and ran into the woods.
Winston Grant, the dog warden from nearby Atmore Prison, was called to the scene and conducted a lengthy search of the area with his dogs. He tracked the appellant into a field where he was apprehended. Grant found a quantity of torn-up currency scattered around where the appellant was overtaken. On cross-examination he testified that from his personal observation the appellant appeared "o.k." and acted as normal as "any other fugitive you catch."
The appellant produced two witnesses to testify as to his insanity. Reverend Curtis G. Bowen, Jr., the appellant's father, testified that his son acted normal up until a time in his late teens when he began experiencing drug abuse problems. He testified that in the spring of 1978 he had taken his son to their family physician who, after examining the appellant, suggested that he be examined by a psychiatrist. He took the appellant to a psychiatrist stating that such a move was motivated by his prior observations of the appellant which indicated that he had difficulty relating to people and obtaining and maintaining employment. Reverend Bowen stated that his son described hallucinations in which someone was attempting to harm him and someone was reading his mind. He described his son as being extremely depressed and out of touch with reality.
Dr. W.H. Rudder, a consulting psychiatrist at Searcy Hospital, testified on behalf of the appellant. On motion of defense counsel, filed after arraignment but prior to trial, the trial judge found the appellant to be insane at that time and committed him to Searcy Hospital until "restored to his right mind." Dr. Rudder had treated the appellant while confined at Searcy Hospital and on trial testified as to his diagnosis and treatment. He stated that he initially diagnosed the appellant as suffering from a psychosis or drug or poison intoxication. However, after consulting with other staff members and after administering and reviewing the results of a battery of psychiatric evaluation tests, Dr. Rudder reached a different result in his final diagnosis. He then found the appellant suffering from "acute schizophrenia" with "almost certain exacerbation under stress of substance abuse" and a high probability that he had "Old World" or "Process" schizophrenia. The witness defined such terms as meaning "a type of lifelong thought disorder — for a man on the street, that would be considered lifelong craziness — probably congenital."
Dr. Rudder testified that the appellant's mental condition had probably been drifting from normal to abnormal since his late teens. He stated that the appellant's illness could have manifested itself in his late teens, but could not state whether the condition stemmed from drug problems. Dr. Rudder concluded that on the day of the crime, the appellant did not know the difference between right and wrong. He further opined that the appellant was not faking his illness. However, according to Dr. Rudder, the appellant's I.Q. of 101 was above average.
In rebuttal the State again offered testimony from George Massey. He testified that he was in the presence of the appellant for approximately forty-five minutes. He stated that the appellant "appeared to be a rational, nervous young man" who "seemed to be knowing what he wanted, and he seemed to me like he knew what he was *Page 491 
doing." In Massey's opinion the appellant was sane when he was with him.
Section 15-16-1, Code of Ala. 1975, provides:
 "When the defense of insanity is set up in any criminal prosecution, it must be by special plea, interposed at the time of arraignment and entered of record upon the docket of the court, which, in substance, shall be `not guilty by reason of insanity.' A plea of insanity shall not preclude the usual plea of the general issue, which shall not, however,
 put in issue the question of the irresponsibility of the accused by reason of his alleged insanity, this question being triable only under the special plea."
The record shows the arraignment in the instant case to have been conducted on March 19, 1979. The record reveals no special plea of insanity as required by § 15-16-1, supra. In the absence of such a formal plea, the question of insanity was not properly before the jury for their consideration thus no legal basis existed upon which the jury could have returned a verdict of "not guilty by reason of insanity."
Nevertheless the trial court stated at the beginning of the trial: "Let the record show that the defendant, on arraignment, enters a plea of not guilty and a plea of not guilty by reason of insanity." Likewise, the trial judge charged the jury on the defense of insanity and inter alia instructed the jury that it could return a verdict of "not guilty by reason of insanity" if the jury was convinced that the appellant was insane at the time of the commission of the offense.
Although the record proper does not show a special plea on the date of arraignment, a review of the record in its totality leads us to believe that such a plea was made sometime prior to the beginning of trial and accepted by the trial judge. InGoodman v. State, 15 Ala. App. 161, 72 So. 687 (1916), the then Court of Appeals stated:
 "The right to plead an additional plea after arraignment is not absolute, but a matter addressed to the sound discretion of the court, and its action is not revisable on appeal. . . ."
We will, therefore, consider the appellant's contention that his insanity was proved by a preponderance of the evidence at trial.
Section 15-16-2, Code of Ala. 1975, provides:
 "Every person over 14 years of age charged with crime is presumed to be responsible for his acts, and the burden of proving that he is irresponsible is cast upon the accused. The defense of insanity in all criminal prosecutions shall be clearly proved to the reasonable satisfaction of the jury."
The burden of proving insanity rests upon the defendant and must be established by a preponderance of the evidence.Christian v. State, Ala., 351 So.2d 623 (1977), and cases cited therein.
In the instant case the appellant supplied one expert witness, Dr. Rudder, who expressed an opinion that the appellant was insane at the time of the commission of the offense. The defense also put on the non-expert, or lay testimony, of the appellant's father in support of the defense of insanity. The jury, in determining the weight and credibility to be given to the testimony of these two witnesses, could certainly consider the fact that the latter witness was the father of the appellant. As to the former witness, Dr. Rudder, the rule is that even undisputed expert medical testimony is not conclusive upon the jury. It must be weighed like all other evidence and may be rejected by the jury. Pickett v. State, 37 Ala. App. 410, 71 So.2d 102 (1954), cert. denied, 260 Ala. 699, 71 So.2d 107. Such expert testimony however may not be arbitrarily ignored by the jury. Christian, supra; Sasser v. State, Ala.Cr.App., 387 So.2d 237 (1980).
In both Christian and Sasser, supra, no evidence of sanity had been presented by the State. Expert testimony in both of those cases tended to establish the insanity of the defendants at the time of the crimes in question. The testimony of the expert witnesses in both cases was convincing whereas the State relied solely upon the *Page 492 
presumption of sanity which attends each accused via § 15-16-2, supra. In both those cases the defense met the test of showing insanity by a "preponderance of the evidence."
In Woods v. State, Ala.Cr.App., 364 So.2d 1178 (1978), cert. denied, Ala., 364 So.2d 1186, we find a factual situation more closely aligned to the instant case. In Woods the defense called two witnesses who were physicians specializing in psychiatry, both of whom gave what this court termed to be "impressive and informative testimony" concerning that appellant's insanity. Both concluded that Woods was legally insane at the time he committed the offense and that he did not know right from wrong. Likewise, the defense elicited testimony from an attorney who testified that in his opinion Woods was insane.
In that case the State only adduced testimony from two lay witnesses that the defendant was sane. One such witness was serving a jail sentence for selling marijuana, and the other was a housekeeper for whom Woods had done odd jobs in the past. In that case this court held that the preponderance and weight of the evidence sustained the plea of insanity. In the instant case we reach the opposite conclusion.
The instant case is certainly not one of those exceptions alluded to in Herbert v. State, Ala.Cr.App., 357 So.2d 683, cert. denied, Ala., 357 So.2d 690 (1978), where the proof of insanity is overwhelming and uncontradicted. In the instant case the State's witnesses were with the appellant at or around the time the crime was committed and had ample opportunity to observe him at that time. The credibility of the State's witnesses as to sanity here appears to be considerably more substantial than that of the State's two witnesses in Woods, supra.
After a careful review of all the testimony in the instant case, we are not convinced that the expert opinion of Dr. Rudder is so predominant as to overcome the statutory presumption of sanity supported by the testimony of three lay witnesses based upon their personal observation of the appellant.
In making such decisions, this court does not substitute itself for the jury. Whether we would have given more weight to the testimony of Dr. Rudder had we served on the jury is not the test. We must determine whether the witnesses for the defense clearly and conclusively established the appellant's insanity by a preponderance of the evidence, that the verdict of the jury was arbitrary and patently erroneous. We find the jury's verdict to be supported by the evidence in the case.
AFFIRMED.
All the Judges concur.