This appeal is here upon consolidation of two convictions of robbery in the first degree arising from the same fact situation. Appellant was tried before a jury and convicted in the first case and sentenced to 20 years' imprisonment. In the second case, the facts were stipulated and submitted to the trial judge, who found appellant guilty and sentenced him to 20 years' imprisonment. The cases were consolidated to allow appellant to raise the issue of his defense of mental disease at the time the robberies were committed.
Jimmy Wayne Thomas testified he was the manager of the Winn-Dixie store in the Brookwood Convenience Center on April 18, 1980. At approximately 3:30 P.M. that day, a black man, identified by Thomas at trial as the appellant, tried to push his way into Mr. Thomas' office, and then stated "it was a stick up and he would blow my damn head off." A struggle between the witness and the appellant then ensued over the appellant's weapon. The gun fired twice, hitting Mr. Thomas in the head and shoulder, respectively. After some more scuffling, the appellant shot Mr. Thomas again, wounding him in the stomach. The appellant then unsuccessfully attempted to open the safe, which contained several thousand dollars, after which he went out into the store and attempted to open the cash registers by beating upon them. Mr. Thomas stated appellant's speech was clear when he spoke to him that day, and that appellant's eyes did not appear unusual in any way. The witness was shown a weapon and identified it as appearing to be the same weapon with which he had been shot.
Ernest C. Kendrick, Jr. testified he was in the parking lot outside of the Brookwood Winn-Dixie on April 18, 1980 at approximately 3:30 P.M. He had gone to his truck *Page 200 
to get his pistol after having heard of the robbery at the Winn-Dixie store. He entered his truck and drove it into view of the entrance to the Winn-Dixie. As he watched, a black man exited the store at a walking pace, followed at some distance by the store employees. Mr. Kendrick moved his truck to keep the man in view, and saw him approach the driver in an automobile with three occupants. The driver got out, and the man got into the vehicle. Mr. Kendrick then pulled his truck in front of the other vehicle, pulled out his pistol, and aimed it at the man. Kendrick ordered him to exit the vehicle, and the two other occupants got out and ran. The man then exited the vehicle with his hands raised, holding a pistol in one hand. The man then said "I am not going to shoot you, man, but you are going to have to shoot me, because I am not going back to jail." Mr. Kendrick observed the police approaching, and then the black man got back into the vehicle and backed it into another automobile, and drove away with the police in pursuit. Mr. Kendrick identified the appellant as the same man whom he had observed with the gun on April 18, 1980. He stated appellant appeared to "move fine" that day and did not slur his words when he spoke.
Johnny Thacker, a Homewood police officer, testified he responded to a call to the Winn-Dixie on April 18, 1980. Upon arrival, he was flagged down by a Winn-Dixie employee who pointed out a vehicle in which the robber was attempting to flee. As he approached the vehicle, it backed out of the parking space and headed west. Officer Thacker turned on his light and siren, and the suspect accelerated. As the suspect's vehicle turned, Officer Thacker began to ram it with his vehicle, and continued to do so until the suspect was forced off the road into a line marker. The suspect abandoned the vehicle and fled on foot, followed by Officer Thacker. Thacker ordered the suspect to halt at gun point, and then took him into custody. Officer Thacker recovered a Charter Arms undercover Model .38 from the vehicle which he identified at trial. He also identified appellant as the same man he apprehended on April 18, 1980. Officer Thacker identified a piece of paper as one he received from the appellant at the Homewood Police Department. The paper contained the words "This is a stick up."
Officer John Tully observed the appellant for one hour at the Homewood Police Department, directly after the robbery, beginning at approximately 4:55 p.m. on August 18, 1980. In his opinion, appellant did not appear to be intoxicated.
The appellant moved to exclude the State's evidence at the close of the State's case. The motion was denied, and appellant called Dr. Robert Estock to testify. Dr. Estock, a psychiatrist and professor of psychiatry at the University of Alabama Medical School, examined appellant on September 15, 1980 at the Jefferson County Jail. Appellant told Dr. Estock he had a long history of drug use, and that he used heroin while in the army. He had also entered a drug treatment program and received counseling before being discharged from the army on January 29, 1980. Appellant told Dr. Estock he had resumed his drug habit after discharge from the army, and that he was high on drugs on the day the robbery occurred, having taken Talwin, Pyribenzamine, LSD, and wine. Dr. Estock stated that an organic mental disorder, caused by some chemical or physical effect on the brain, can cause mental illness. Drugs, such as those the appellant stated he took on the day of the robbery, could cause such an organic mental disorder. A person's thinking processes, judgment, and memory would be temporarily affected by the drug usage. Based upon the information appellant gave Dr. Estock, the doctor formed the opinion that at the time of the robbery, appellant was experiencing accute intoxication, secondary to the ingestion of drugs, which could have influenced appellant's ability to adhere to the law, even though appellant may have known the wrongfulness of his act.
On cross-examination, Dr. Estock said he found no evidence of any psychosis in his examination of appellant, and that appellant possessed normal intelligence. He *Page 201 
stated that if appellant had taken the kind and amount of drugs he indicated he took on the day of the robbery, that he would generally appear intoxicated to a lay person. Further, he stated other equally qualified psychiatrists could differ with his evaluation of the appellant. He also stated that if what the appellant told him was not the truth, it would change his opinion and diagnosis of appellant's mental competency on the day of the robbery.
The appellant, testifying on his own behalf, stated he was twenty-three years old at the time of trial. He corroborated Dr. Estock's testimony concerning the drugs he allegedly took on the day the robbery occurred. Appellant stated he could not deny having committed the crime for which he was indicated, because he had no first-hand personal recollection of the events that occurred on the afternoon of April 18, 1980. Appellant denied that he recognized the weapon used in the crime, and stated he did not know from where it was obtained.
Appellant's only contention on appeal is that the jury arbitrarily rejected the overwhelming evidence of appellant's mental disease, and therefore the verdict was contrary to the great weight of evidence presented at trial.
The criteria for determining whether the appellant has carried his burden of proof in sustaining the affirmative defense of insanity, are set forth in Herbert v. State,357 So.2d 683 (Ala.Cr.App.), cert. denied, 357 So.2d 690 (Ala. 1978), as follows:
 "1. By statute, there is a presumption of sanity extending to all persons over the age of 14.
 "2. The defense of insanity is an affirmative defense. The burden of proving this defense rests upon the defendant and never shifts to the state.
 "3. The burden upon the defendant is to establish the issue of legal insanity by a preponderance of the evidence and to the reasonable satisfaction of the jury.
 "4. The question of insanity at the time of the commission of the crime is a matter to be determined by the jury from a consideration of all the evidence.
 "5. In making its determination, the jury may reject all expert testimony though it is without conflict.
 "6. However, opinion testimony, even of experts must be weighed by the jury and may not be arbitrarily ignored."
There is one exception to the general rules which can require a reversal of the jury determination to convict the appellant. Where the evidence of the appellant's insanity is both overwhelming and uncontradicted, the trial court should instruct the jury that the appellant has overcome the statutory presumption of sanity. Smith v. State, 411 So.2d 839, (Ala.Cr.App. 1981). After careful review, we find that the evidence presented at trial below was neither overwhelming nor uncontradicted. Dr. Estock's testimony concerning mental disease was predicated upon the assumed veracity of appellant's assertion that he took drugs on the day of the crime. The jury could have rejected the truthfulness of appellant's assertion that he took the drugs.
Additionally, Dr. Estock testified that if appellant took the drugs, he could have been recognized by lay persons as appearing to be intoxicated. Witnesses who testified as to their observation of appellant during the time of the robbery and immediately thereafter, testified he did not appear to be affected. Although Dr. Estock was the only expert witness to testify, even undisputed expert medical testimony is not conclusive upon the jury, but is to be weighed like all other evidence. While expert medical testimony may not be arbitrarily ignored, it may be rejected by the jury, just as any other evidence. Bowen v. State, 386 So.2d 489 (Ala.Cr.App.), cert. denied, 386 So.2d 492 (Ala. 1980); Graham v. State,383 So.2d 892 (Ala.Cr.App.), 383 So.2d 895 (Ala. 1980). The evidence of insanity in the instant case was neither overwhelming nor uncontradicted. The statutory presumption of sanity was not overcome, and therefore the jury verdict was not contrary to the preponderence of evidence. *Page 202 
We have examined the record and find no error, therefore; the judgment of conviction by the Jefferson Circuit Court is affirmed.
AFFIRMED.
All the Judges concur.