Edward Charles Sistrunk appeals his conviction for murder from the Circuit Court of Calhoun County. Appellant was sentenced to life imprisonment for the stabbing death of his fourteen-year-old niece, Jacqueline Carol Sistrunk. Two issues are raised on appeal. The facts, largely undisputed, will place those issues in perspective.
Appellant lived in Anniston with his mother, Cora Sistrunk, one of his sisters, and her two children. The victim, appellant's fourteen-year-old niece by another sister, and the victim's thirteen-year-old sister, also lived with their grandmother, Mrs. Sistrunk. A third sister, Rose Wright, also lived in Anniston.
The homicide occurred on the night of November 24, 1982, in Cora Sistrunk's living room. Family members testified that the appellant left the living room, went into the kitchen to make a sandwich, then returned and sat down on the stairs in the living room. No one saw a knife or other weapon in appellant's hands and there was no testimony of any argument or dispute among the group. Shortly after he sat down, appellant rose from the stairs, walked over to the victim and, without a word, stabbed her in the chest with a kitchen knife. Appellant ran from the house. Police later found him in downtown Anniston; the arresting officer testified that he was crying and intoxicated.
Before the killing, appellant had been seeing a counselor at the Calhoun-Cleburne Mental Health Center. Rose Wright had made appointments for him at the center because, in her opinion, appellant had been acting strangely. Both of appellant's sisters and his mother said that before and after he began going for counseling, appellant exhibited such behavior as sleeping in his clothes, failing to clean up after himself, and asking relatives, including the victim and her sister, why they talked about him behind his back. A counselor for the mental health center testified that appellant had been diagnosed as paranoid schizophrenic and had been prescribed medication to control his symptoms. However, he and other witnesses also testified that appellant would often fail to take the medicine.
 I
Appellant pleaded not guilty by reason of insanity, thereby saddling himself with the heavy burden of proving his insanity by a preponderance of the evidence and to the jury's reasonable satisfaction. See Herbert v. State, 357 So.2d 683, 688
(Ala.Crim.App.), cert. denied, 357 So.2d 690 (Ala. 1978). He sought to prove his lack of criminal responsibility through the testimony of several of his family members as well as expert witnesses. Appellant now asserts that the verdict must be reversed as against the weight of the evidence.
The basic principles of law governing the insanity defense are summarized in Herbert, supra. They are:
 "1. By statute, there is a presumption of sanity extending to all persons over the age of 14.
 "2. The defense of insanity is an affirmative defense. The burden of proving this defense rests upon the defendant and never shifts to the state.
 "3. The burden upon the defendant is to establish the issue of legal insanity by a preponderance of the evidence and to the reasonable satisfaction of the jury. *Page 289 
 "4. The question of insanity at the time of the commission of the crime is a matter to be determined by the jury from a consideration of all the evidence.
 "5. In making its determination, the jury may reject all expert testimony though it is without conflict.
 "6. However, opinion testimony, even of experts must be weighed by the jury and may not be arbitrarily ignored."
Herbert is one of only seven cases to date in which an Alabama appellate court has overturned a murder conviction on the ground that the guilty verdict ran against the overwhelming weight of the evidence of insanity. See Pickett v. State,37 Ala. App. 410, 71 So.2d 102, cert. denied, 260 Ala. 699,71 So.2d 107 (1954); Christian v. State, 351 So.2d 623 (Ala. 1977); Woods v. State, 364 So.2d 1178 (Ala.Crim.App.), cert. denied, 364 So.2d 1186 (Ala. 1978); Sasser v. State,387 So.2d 237 (Ala.Crim.App.), writ denied, 387 So.2d 244 (Ala. 1980);Smith v. State, 411 So.2d 839 (Ala.Crim.App. 1982); and Turnerv. State, 455 So.2d 910 (Ala. 1984). In order for this court to reverse, evidence of insanity must be "overwhelming,"Christian, supra at 625; "uncontradicted," Herbert, supra, at 689; and "clear . . . strong and undisputed," Boyle v. State,229 Ala. 212, 222, 154 So.2d 575, 583 (1934). Furthermore, there may be no facts in evidence which would support a reasonable inference that the defendant was sane. CompareCunningham v. State, 426 So.2d 484, 491 (Ala.Crim.App. 1982), cert. denied, 426 So.2d 484 (Ala. 1983), with Alvis v. State,434 So.2d 859, 864 (Ala.Crim.App. 1983). In Cunningham, this court found that "[t]he defendant's conduct and demeanor after the crime provided a reasonable inference of sanity." But inAlvis, an assault case, there was nothing in the defendant's conduct or demeanor to support the inference that his acts "were those of a sane man." Alvis, id.
Because of the presumption of sanity, the state is not required to prove that the defendant is sane. See Dancy v.State, 437 So.2d 620, 621 (Ala.Crim.App. 1983); Cunningham,supra, at 490. A guilty verdict is not arbitrary if the record reveals any facts from which the jury could have inferred that the defendant was sane at the time of the crime. Cunningham at 489. This is true even though all the expert witnesses testify that the defendant was insane, because of the rule that the jury may reject even uncontradicted expert testimony. Herbert,supra, at 688.
As we noted in Cunningham, it is a rare case in which the jury's finding will be disturbed in favor of the appellant's evidence of insanity. Analysis of these cases requires a careful examination of the record in order to determine what, if any, evidence was available from which the jury could reasonably conclude that the defendant knew what he was doing and/or could have controlled his criminal behavior. Presentation of a mere reasonable doubt of sanity does not authorize an acquittal. Boswell v. State, 63 Ala. 307, 326, 35 Am.Rep. 20 (1880).
The central question, then, is what evidence must be adduced to support the guilty verdict. In this case, the state elected to rely on the presumption of sanity, and declined to produce expert witnesses in rebuttal to testify that appellant was sane. Appellant, however, produced four expert witnesses. Two psychologists, a psychiatrist, and a mental health counselor testified that appellant exhibited symptoms of paranoid schizophrenia after the murder. The mental health counselor was the only expert witness who had been treating appellant before the crime and who was familiar with his mental condition at that time.
Testimony from both the state's and the defendant's lay witnesses, however, produced ample evidence from which the jury could have inferred sanity despite the expert testimony. SeeBullard v. State, 408 So.2d 164, 167 (Ala.Crim.App.), cert. denied, 408 So.2d 167 (Ala. 1982). First, the sister of the deceased, who was also appellant's niece, testified that no one had ever told her that appellant was crazy or abnormal, *Page 290 
nor had she been "warned" about appellant by other family members. She and her sister played with appellant and talked to him on a regular basis even though they were aware that, at his sister's behest, appellant had been seeing a counselor at the mental health center.
Furthermore, appellant displayed a consciousness of guilt when he fled from the house after stabbing his niece. The issue of sanity is ordinarily one for the jury when there is evidence of consciousness of guilt. Cunningham, supra, at 490. (Cf.Herbert, at 684, in which the defendant calmly told arresting officers that "he shot his wife and she was in the bathroom.")
In the instant case, police found appellant in downtown Anniston, kneeling down and crying. The arresting officer testified that appellant "was intoxicated". The jury's inference that appellant was sane but intoxicated would authorize a verdict of guilty, as voluntary intoxication will not justify an acquittal unless the consumption of alcohol causes a mental disturbance which impairs the defendant's ability to tell right from wrong. Lister v. State,437 So.2d 622, 624 (Ala.Crim.App. 1983).
The jury could also have drawn a legitimate inference that the appellant's motive was revenge. See Cunningham, at 490-91. Sistrunk himself testified that the deceased and her sister had taken over his bed when they moved into his mother's house.
While all of the lay witnesses who testified that appellant was insane before the crime were related to the deceased, they were more closely related to the appellant. This and the fact that they were lay witnesses, untrained in the intricacies of mental diagnosis, were facts for the jury to consider in weighing their testimony.
Finally, in this case there was additional evidence which was not presented in any of the preceding cases which overturned similar convictions. Appellant took the witness stand and testified as to his own state of mind at the time of the crime. His demeanor and manner of testifying constituted evidence which was proper for the jury to consider in reaching their decision. "The conduct of a witness on the stand is, of course, a form of testimony; his demeanor is always in evidence when he testifies." Stewart v. United States, 366 U.S. 1, 6, n. 13,81 S.Ct. 941, 944, n. 13, 6 L.Ed.2d 84 (1961). Appellant's state of mind at the time of trial demonstrated primarily his capacity to stand trial. The jury could also decide whether or not they believed he was telling the truth about his intent at the time he stabbed his niece.
In affirming the trial court's denial of a new trial, we emphasize the deference that must be afforded the discretion of the jury. Theirs was a unique opportunity to observe the live testimony and weigh the evidence in light of the intangible considerations of credibility. This court cannot, in the absence of blatant disregard for the law, substitute itself for the jury. Bowen v. State, 386 So.2d 489, 492 (Ala.Crim.App.), writ denied, 386 So.2d 492 (1980).
 II
Appellant contends that the judge's charge to the jury defining preponderance of the evidence was incorrect, and that the refusal of appellant's requested charge constitutes reversible error. We disagree.
Defense counsel did not except to the jury instructions as given. His only specific request was that the court instruct the jury on expert witnesses. Exceptions to an oral charge must be made before the jury retires to deliberate. Allen v. State,414 So.2d 989 (Ala.Crim.App. 1981), aff'd, 414 So.2d 993 (Ala. 1982). Counsel's only indication of dissatisfaction before the jury retired was his statement for the record that he had submitted other "prepared jury charges." This is insufficient to preserve the contention for review. Allen, supra. Even if there had been an appropriate exception, there would be no error on this ground, as the court's charge on preponderance of the evidence was adequate. "The charge was expressed in plain language that is susceptible to ordinary understanding *Page 291 
and should not be subjected to `hypercriticism.'" Brackin v.State, 417 So.2d 602, 605 (Ala.Crim.App. 1982).
AFFIRMED.
All the Judges concur.