The appellant, Charles Lawhon Justo, was convicted of rape in the first degree, a violation of § 13A-6-61, Code of Alabama 1975, and burglary in the first degree, a violation of §13A-7-5, Code of Alabama 1975. Appellant Justo was sentenced to life without parole under the Habitual Felony Offender Act.
The state's evidence tended to show that early in the morning of April 8, 1988, the victim was raped in her home. The victim was at home with her son and a friend of her son. She was awakened around 4:30 a.m. by a hand placed over her mouth and a knife at her throat. After telling her to be quiet, her assailant rolled her on her back and took off her sweatshirt. She resisted, and her assailant told her to be quiet or he would injure her son. He then raped her.
At trial, defense counsel stipulated that the appellant had broken into the victim's apartment and had raped her. Appellant's only defense at trial was that he was not legally responsible for his actions by reason of insanity.
 I
Appellant contends that the trial court erred in denying his motion for new trial because, he says, the verdict was against the great weight of the evidence. Appellant contends that the evidence of his insanity *Page 314 
was too strong for the jury to disregard.
According to § 15-16-2, Code of Alabama 1975, "Every person over 14 years of age charged with a crime is presumed to be responsible for his acts." As Judge Patterson stated in Bui v.State, 551 So.2d 1094 (Ala.Cr.App. 1988), aff'd, 551 So.2d 1125
(Ala. 1989):
 "Insanity is an affirmative defense which must be proven by the defendant to the reasonable satisfaction of the jury and the burden of proof of that issue never shifts to the state, but remains on the defendant throughout the trial."
Only when the evidence is undisputed will an appellant be granted a directed verdict. Cummingham v. State, 426 So.2d 484
(Ala.Cr.App. 1982).
In this case, the appellant presented an expert, Dr. Rivenbark, who stated that the appellant had a borderline personality disorder. In the month that the appellant was at Taylor Hardin Secure Medical Facility for psychiatric examination, Dr. Rivenbark saw the appellant at least once a week. He testified that he did not observe the appellant exhibit any psychotic behavior. Dr. Rivenbark stated that the appellant told him that on the night of the rape he had ingested large quantities of alcohol and cocaine. Dr. Rivenbark, apparently believing what the appellant claimed concerning substance abuse on the night of the crime, stated that on that night the appellant was "substantially impaired." Dr. Rivenbark also expressed an opinion that he did not think the crime would have been committed if the appellant had been "sober."
The state presented several witnesses who disputed appellant's defense. The victim testified that the appellant did not smell of alcohol and his speech was not slurred. Captain Copeland, who read to the appellant hisMiranda warnings, stated that the appellant did not smell of alcohol or appear to be intoxicated.
On rebuttal, a state's witness who was a fellow employee of the defendant, testified that he had never seen the appellant exhibit any behavior common to people who have a chemical dependency.
Leon Goodwill, a counselor at The Bridge, a mental health facility, at which the appellant had once been a patient, testified that as of April 7, 1989, he did not believe that the appellant had returned to the use of drugs. He based this opinion on conversations with the appellant and drug tests performed on the appellant. The appellant had been released from The Bridge on March 28, 1988, and routinely thereafter underwent periodic drug tests.
 " 'The rule is fully settled with us that opinion evidence, even of experts, and in insanity cases, is to be weighed by the jury, and its probative force in overcoming the presumption of sanity, as a rule, is for them. [Citations omitted.]
 " 'This does not mean, however, that the jury may arbitrarily ignore or reject such testimony. Such evidence is admitted upon the ground that men who have given great study and had much experience are more competent than the layman to form a correct opinion on the question of sanity. It is illogical to say the layman in the jury box may lightly set up his own opinion to the contrary. But the juror must determine first whether the hypotheses on which the expert opinion is based are proven in substance and effect, and then weigh the expert evidence in connection with other evidence, indulging the presumptions the law declares.'
 "Boyle v. State, 229 Ala. 212, 224, 154 So. 575, 586 (1934)."
Bui, 551 So.2d at 1103.
The case of Thomas v. State, 418 So.2d 199 (Ala.Cr.App. 1982), is similar to the case at bar. In Thomas, the expert's testimony concerning the defendant's mental illness "was predicated upon the assumed veracity of appellant's assertion that he took drugs on the day of the crime. The jury could have rejected the truthfulness of appellant's assertion that he took the drugs." Thomas, 418 So.2d at 201. The jury also had the right to consider the intent of the appellant. *Page 315 
In the instant case the jury was free to accept or reject the insanity defense.
 II
The appellant also argues that the conduct of the prosecutor prevented his having a fair trial. Specifically, he maintains that the following statement, which was made during the closing argument, was highly prejudicial.
 "[PROSECUTOR]: What they want you to say is, 'Poor Mr. Justo is the victim. He's the victim of having overdone his cocaine and his whiskey and had a personality disorder. He's the victim. Turn him loose.' Huh-uh (indicating no).
 "[DEFENSE COUNSEL]: Judge, I'm going to object to 'turn him loose.' There's no — we all know that's not going to be happening even if that verdict came back.
"THE COURT: Let's proceed with your argument.
 "[PROSECUTOR]: Not unless we're going into something outside the evidence.
"THE COURT: No."
Appellant also maintains that the trial court erred in not giving the jury a curative instruction.
This issue was not preserved for this court's consideration. "The general rule is that improper argument of counsel is not grounds for a new trial or the subject of review on appeal unless the complaining party has moved that the offending remark be excluded from the jury's consideration." Thomas v.State, 440 So.2d 1216, 1218 (Ala.Cr.App. 1983). Furthermore, " '[i]n the absence of a ruling, a request for a ruling, or an objection to the court's failure to rule, there is nothing preserved for appellate review.' " Johnson v. State,542 So.2d 341, 345 (Ala.Cr.App. 1989), quoting Moore v. State,457 So.2d 981, 988 (Ala.Cr.App. 1984), cert. denied, 470 U.S. 1053,105 S.Ct. 1757, 84 L.Ed.2d 820 (1985).
 III
Appellant next contends that the trial court erred in allowing into evidence several statements made by two prosecution witnesses. The following occurred during the cross-examination of Captain Copeland:
 "Q: (BY MR. PHILLIPS): You didn't tell him anything about if he gave you the statement, you would make sure the District Attorney or the State knew that he cooperated, or anything like that?
 "A: No, sir. There was nothing — I knew he was a habitual offender.
 "Q: And he knew he was a habitual offender, didn't he?
"A: I guess he did.
 "Q: Now, Mr. Pitts questioned you about did you smell alcohol or anything of that nature. The arrest was made some five to six days after the offense, wasn't it?
 "A: It was — yes, it was several days later after the first offense."
After Captain Copeland finished testifying, defense counsel stated:
 "MR. PHILLIPS: Judge, I just want to be real careful we don't get into this thing about the second offenses. If necessary, I'll make a motion for mistrial.
 "THE COURT: It's not grounds at this point. I respect your position.
 "MR. PITTS: Well, I will state, for the record, that I have done my best in telling the witnesses not to make reference to the other case, but some witnesses are more prone to than others.
 "THE COURT: You need to be careful in your examination.
"MR. PHILLIPS: I have been."
Also, during the cross-examination of Officer Hopper, the following occurred:
"Q: Did he ask you what he was being charged with?
 "A: At first, when I first came in contact with him after I Mirandized him, he asked me what it was all about, as I can recall. And I told him that he was a suspect in two counts of burglary and two counts of rape.
"Q: That's all he told you?
"A: That's all that I told him.
"Q: All that you told him?
"MR. PHILLIPS: That's all. *Page 316 
"MR. PITTS: I have no further questions."
After Officer Hopper's testimony, defense counsel approached the bench and stated:
 "MR. PHILLIPS: Judge, I feel at this time that we've got to make a motion for a mistrial. The cases were severed for the specific intention so that the jury would not know about the two cases overlapping. Not twenty minutes before Lt. Hopper was on the stand, the District Attorney, Keith, had told me that he had instructed all his witnesses not to mention anything about the prior offense. And then, totally unexpected, out of the blue, Lt. Hopper blurts out about two counts of rape and two counts of burglary. I think that prejudices the jury against my client to the extent that I've got to ask for a mistrial.
 "THE COURT: The court recollects that came as a result of questions that you had asked. . . .
 "MR. PHILLIPS: Yes, sir, it was. But there is no way in the world that I can know what all the witnesses are going to ask. If they have not been instructed by the District Attorney. I'm trying to do this in good faith. And I assume —
 "THE COURT: I understand. And I understand you are protecting the best interest of your client. Those circumstances taken in their totality, motion for mistrial is denied."
In each instance during the cross-examination, counsel made no motion to exclude. However, after the testimony of Officer Hopper, a motion for mistrial was made. Our Supreme Court inEx parte Marek, 556 So.2d 375 (Ala. 1989), stated:
 "[W]hen a litigant makes a motion for a mistrial immediately after the question or questions are asked that are the grounds made the basis of the motion for the mistrial, and the grounds for the motion are clear and definite, then the motion for mistrial will preserve for review lesser prayers for relief, such as an objection or motion to strike."
In this case, however, the motion for mistrial was not made immediately after the objected-to testimony. Thus, even if we were to view the motion as an objection or motion to strike, it was made too late. The motion simply was not timely. SeeGoodson v. State, 540 So.2d 789 (Ala.Cr.App. 1988). The matter was not called to the Court's attention at a time when a curative instruction might have been given or other curative action might have been taken. The court committed no error in this instance.
 IV
Appellant next contends that the trial court erred in allowing a statement made by him into evidence. Specifically, he argues that the arrest was illegal, and that the statement was therefore inadmissible.
Appellant contends that there was no probable cause to arrest him, which is necessary to an arrest without a warrant. As § 15-10-3, Code of Alabama 1975, states:
 "An officer may arrest any person without a warrant, on any day and at any time. . . .
". . . .
 "3. When a felony has been committed and he has reasonable cause to believe that the person arrested committed it."
In Daniels v. State, 534 So.2d 628 (Ala.Cr.App. 1985), aff'd,534 So.2d 656 (Ala. 1986), cert. denied, 479 U.S. 1040,107 S.Ct. 898, 93 L.Ed.2d 850 (1987), we stated: "[R]easonable cause has been equated with probable cause." 534 So.2d at 651. The totality-of-the-circumstances is the test now used for determining probable cause. See Illinois v. Gates,462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). As the Supreme Court stated in Gates: "[P]robable cause is a fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules." 462 U.S. at 232, 103 S.Ct. at 2329.
Our court has defined reasonable cause as " 'knowledge of circumstances such as would lead a reasonable man of ordinary caution, acting impartially, reasonably and without prejudice, to believe the person arrested *Page 317 
to be guilty.' " Harrell v. State, 475 So.2d 650, 652
(Ala.Cr.App. 1985), quoting Oliver v. State, 385 So.2d 69
(Ala.Cr.App. 1980).
In this case, two rape victims had provided descriptions of their assailant, and the appellant fit those descriptions. One victim stated that her assailant talked freely about himself to her. He told her that he was divorced and had one child. That victim also related to the police that she believed her assailant was an engineer or mathematician since he talked about using mathematic equations on his job. Both victims lived in the same apartment complex as the appellant. Another female resident of the apartment complex had given a description of a "peeping Tom" which matched the appellant. This resident observed the individual go into an apartment in the complex. She later determined that the appellant lived there. This was reported to the police, who then ran a check on the appellant and determined that he had two prior arrests for rape and burglary. Police were also told by the appellant's probation officer that the appellant was an engineer, that he was divorced, and that he had a five-year old daughter. From the evidence, the police had probable cause to arrest the appellant without a warrant. Appellant stated at the suppression hearing that he was outside his building near a trash "dumpster" when arrested.
Appellant does not contend that the statement he gave to the police was involuntary. Nor does he dispute the testimony that he was read his rights as required by Miranda v. Arizona,384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
Because the police had probable cause to arrest the appellant, no reason exists for his subsequent statements to be excluded. The trial court committed no error.
 V
Appellant next contends that the trial court erred in sentencing him under the Habitual Felony Offender Act to life without parole.
At the sentencing hearing, the state introduced proof of three prior felony convictions. One was drug-related. Appellant contends that the drug-related conviction could not be used for enhancement purposes, citing Ex parte Chambers, 522 So.2d 313
(Ala. 1987). Chambers is distinguishable from the present case. In Chambers, the appellant's last conviction was drug-related and a prior conviction used for enhancement was also drug-related. Our Supreme Court stated in Chambers that individuals convicted of offenses under the Controlled Substances Act are to be sentenced according to that act.
In the instant case, appellant's most recent conviction was for rape and burglary. "The Supreme Court has also made it clear that it has not yet addressed the issue of whether prior felony drug convictions can be used under the Habitual Felony Offender Act to enhance punishment for non-drug related felonies." Gibson v. State, 555 So.2d 784 (Ala.Cr.App. 1989). This court, relying on the principle of stare decisis, held inGibson that a prior felony drug offense may be used to enhance a sentence for a felony not drug-related.
Section 13A-5-9, Code of Alabama 1975, reads:
 "(a) In all cases when it is shown that a criminal defendant has been previously convicted of any felony and after such conviction has committed another felony, he must be punished as follows:
". . . .
 "(c) In all cases when it is shown that a criminal defendant has been previously convicted of any three felonies and after such convictions has committed another felony, he must be punished as follows:
 "(1) On conviction of a Class C felony, he must be punished by imprisonment for life or for any term not more than 99 years but not less than 15 years;
 "(2) On conviction of a Class B felony, he must be punished for life in the penitentiary;
 "(3) On conviction of a Class A felony, he must be punished by imprisonment for life without parole." *Page 318 
Appellant had three prior felonies. Upon conviction of this, his fourth felony offense, the trial court was required to sentence him to imprisonment for life without the possibility of parole, and it did so.
 VI
Last, appellant contends that the court erred in denying his motion for new trial. He argues that he was denied a fair trial because the jury saw him entering and exiting the courtroom in handcuffs. "It is not ground for a mistrial that the accused appeared before the jury in handcuffs when this appearance was only a part of going to and from the courtroom." Cushing v.State, 455 So.2d 119, 121 (Ala.Cr.App. 1984).
Appellant received a fair trial. The judgment of the trial court is hereby affirmed.
AFFIRMED.
All the Judges concur.