Travis William West was indicted for murder in violation of § 13A-6-2 Code of Alabama 1975. The jury found the appellant "guilty of murder as charged in the indictment." He was sentenced as an habitual felony offender to life imprisonment without parole.
In the late evening of October 10 and/or the early morning of October 11, 1989, the appellant allegedly murdered a 59-year-old woman with whom he had been living for a brief period. The death allegedly occurred over a three-hour period, during which the victim was first severely beaten, then stabbed in the throat, and finally manually strangulated. The autopsy indicated that strangulation was the cause of death.
 I
The sole issue on appeal is whether the jury ignored significant evidence of insanity of this appellant. Prior to trial, the appellant raised prior to trial the affirmative defense of not guilty based upon severe mental disease or defect. § 13A-3-1, Code of Alabama 1975. The appellant contends that at the time of the alleged crime, he was unable to appreciate the nature and quality or wrongfulness of his act. The appellant presented the testimony of four experts, each of whom testified to the appellant's mental capacity. There was testimony to the fact that the appellant suffered from a serious mental disease or defect. However, as acknowledged by the appellant in his brief, some of the testimony was "unfavorable" to the appellant's contention.
Dr. Lawrence R. Meyer, a licensed clinical psychologist, testified, based on an examination which he performed on the appellant at the Mental Health Center in Huntsville, Alabama. He testified that he *Page 1000 
found the appellant to be moderately retarded.
Dr. Joseph Glaister, a psychiatrist, testified that he had administered a test to the appellant that revealed borderline retardation, but it was his opinion that the appellant was more retarded than the test revealed.
Dr. Wilburn R. Rivenbark, a psychologist and forensic examiner employed by the State of Alabama, testified that when the appellant came to Taylor Hardin Secure Medical Facility in Tuscaloosa, Alabama, it had been determined that he was incompetent to stand trial. It was his opinion that, after seven weeks of competency training, the appellant was competent to stand trial. He testified that the appellant was given an antipsychotic drug as part of his therapy. He further testified that upon admission to the Taylor Hardin facility, the appellant showed no evidence of thought disorder, delusions, or suicidal thoughts. Dr. Rivenbark did indicate that the appellant had related to him that he heard voices that told him to hurt himself.
Dr. David Reynolds Longmire, a physician and neurologist in Russellville, Alabama, testified that he had performed a neurological examination on this appellant. He testified that the appellant was not oriented as to time, and that, from a neurological standpoint, there was a difference in function from one side of the appellant's brain to the other side.
However, Dr. Meyer, during cross-examination, testified as follows:
 "Q. Let me direct your attention to the last paragraph on that page. 'From the material available to me, no symptoms of serious mental illness occurred. However, he might well have been intoxicated at the time of the crime, but this, of course, is not sufficient grounds for an insanity defense. Then too, I am of the opinion Mr. West did know right from wrong based on his apparent behavior of hiding and covering up the body, lying to ambulance personnel and/or other apartment dwellers, trying to dispose of blood covered clothing items, putting clean sheets on the victim's bed, showering, at first hiding when police came, and, his contention now, that he did not commit the murder.' Did you make those statements in your report?
"A. I did.
 "Q. So, you would be of the opinion that he did know right from wrong based on all those facts as reported to you, is that correct?
"A. I so concluded, yes, sir.
 "Q. Page 11 of your report, first paragraph about five lines down, did you make this statement? 'More likely, however, is that we are dealing here with a severe personality disorder with antisocial tendencies and with a very small amount, if any, of remorse and regret, made worse perhaps by excessive drinking, maybe intoxication. Antisocial tendencies are well documented back into his early teen years, and he was described by probation personnel as recently as six months ago as being dangerous and possibly assaultive. In my opinion, based primarily on information provided to me, Mr. West was responsible for his actions on the night of the crime, and was not suffering from any symptoms of serious mental illness. If, as he contends, he is innocent, then all such opinions about his mental state become moot.' Is that still your opinion today?
"A. It is."
(R. 894-895.)
In Alabama, a person is presumed to be sane. "Insanity is an affirmative defense, and a defendant who raises it must prove 'by a preponderance of the evidence and to the reasonable satisfaction of the jury,' Magwood [v. State], 426 So.2d [918], 921-22 [Ala. Crim. App. 1982], that he was insane at the time of the offense. Magwood, 426 So.2d at 922. See alsoMcKinnon v. State, 405 So.2d 78, 80 (Ala.Cr.App. 1981)." Demosv. State, 555 So.2d 1169, 1173 (Ala.Cr.App. 1989). *Page 1001 
The jury's verdict is given great deference. As this court stated in Ellis v. State, 570 So.2d 744 (Ala.Cr.App. 1990):
 "In order for this court to reverse, evidence of insanity must be 'overwhelming' . . .; 'uncontradicted,' . . .; and 'clear, . . . strong and undisputed' . . . Furthermore, there may be no facts in evidence which would support a reasonable inference that the defendant was sane. . . .
". . . .
 ". . . [I]t is a rare case in which the jury's finding will be disturbed in favor of the appellant's evidence of insanity. Analysis of these cases requires a careful examination of the record in order to determine what, if any, evidence was available from which the jury could reasonably conclude that the defendant knew what he was doing and/or could have controlled his criminal behavior. . . .
". . . .
 "In affirming the trial court's denial of a new trial, we emphasize the deference that must be afforded the discretion of the jury. Theirs was a unique opportunity to observe the live testimony and weigh the evidence in light of the intangible considerations of credibility. This court cannot, in the absence of blatant disregard for the law, substitute itself for the jury."
Sistrunk v. State, 455 So.2d 287, 289-90 (Ala.Crim.App. 1984).
"[T]he accused is not entitled to a directed verdict on the issue of insanity unless the evidence of insanity is clear, strong and undisputed. Boyle v. State, 229 Ala. 212, 222,154 So. 575 (1934)." Cunningham v. State, 426 So.2d 484, 486
(Ala.Cr.App. 1982).
 "When the accused has offered evidence sufficient to overcome the presumption of sanity, the State is not required to prove his sanity. Howard v. State, 172 Ala. 402, 408, 55 So. 255
(1911). Insanity is an affirmative defense which must be proven by the defendant to the reasonable satisfaction of the jury. The burden of proving insanity never shifts to the State but remains on the defendant throughout the trial. Grammer v. State, 239 Ala. 633, 196 So. 268 (1940). '(A) reasonable doubt of sanity, raised by all the evidence, does not authorize an acquittal.' "Boswell, [v. State, 63 Ala. 307, 326 (1879)]. 'It would be an anomaly to require the State to prove a fact which the law presumes to exist, and to authorize such fact to be overturned by the injection into the case of a reasonable doubt of its existence. Such is not the law.' Maxwell v. State, 89 Ala. 150, 164, 7 So. 824 (1890). 'Thus, where the whole evidence does not satisfy the minds of the jury that the accused is insane at the time of the commission of the crime with which he is charged, the jury should convict the defendant, notwithstanding that the medical witnesses were of the opinion that such person was insane.' 31 Am.Jur.2d, Expert and Opinion Evidence, Section 186 (1967)."
Cunningham v. State, 426 So.2d at 490.
The appellant presented four experts. The State did not present its own expert witnesses to rebut the appellant's allegations. The expert testimony tended to show that the appellant was mildly to moderately retarded and that he suffered from hallucinations caused by alcohol abuse. One of the appellant's experts did testify that he was of the opinion that the appellant could appreciate the difference between right and wrong.
 " 'There is no requirement that the government rebut expert testimony with its own expert. . . . The same result may instead be accomplished by presenting lay witnesses or other evidence, or by cross-examination designed to weaken the defense expert's credibility.' United States v. Kennedy, 578 F.2d 196, (7th Cir.), cert. denied, 439 U.S. 1049, 99 S.Ct. 727, 58 L.Ed.2d 709 (1978). See also, United States v. Esle, 743 F.2d 1465, 1474
(11th Cir. 1984) ('Where . . . the basis of the expert's opinion has been thoroughly impeached, the court, as fact finder, is thus plainly authorized to reject the opinion entirely')."
Ellis, 570 So.2d at 751.
In this case the proof of insanity was not clear and convincing; Dr. Meyer, one of the *Page 1002 
appellant's experts, testified that he was of the opinion that the appellant did know right from wrong. " 'The evidence in this cause was simply not sufficient as a matter of law to overcome the presumption of sanity and to justify reversing the jury verdict.' " Magwood, 426 So.2d at 923, citing Grahamv. State, 383 So.2d 895 (Ala.Cr.App.), cert. denied,383 So.2d 895 (Ala. 1980); Demos v. State, 555 So.2d 1169
(Ala.Cr.App. 1989).
One expert did believe that the appellant had the ability to appreciate the criminality of his conduct; therefore, the jury did not arbitrarily ignore the expert testimony before it.
For the reasons stated, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.